STATE of Minnesota, Respondent,

v.

James Jean AUSTIN, Appellant.

No. A09–1819.

Court of Appeals of Minnesota.

Sept. 28, 2010.

Lori Swanson, Attorney General, Kelly O'Neill Moller, Assistant Attorney General, St. Paul, MN; and Mark A. Ostrem, Olmsted County Attorney, Rochester, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by TOUSSAINT, Chief Judge; WRIGHT, Judge; and MUEHLBERG, Judge.*

## OPINION

TOUSSAINT, Chief Judge.

Appellant James Jean Austin challenges his conviction of second-degree criminal sexual conduct and burglary, arguing that the state did not establish the intent element of the criminal-sexual-conduct charge. Because we conclude that the doctrine of transferred intent applies to establish the intent element and that appellant possessed the requisite intent despite any alleged intoxication, we affirm.

## FACTS

Appellant spent most of July 29, 2008, with his uncle and his cousin in the uncle's apartment. Appellant consumed about two dozen 12–ounce cans of malt liquor and smoked some marijuana.

Appellant was seen with his uncle and cousin by two sisters, J.J. and L.M., who lived in nearby apartments in the building. L.M. had lived with J.J. and J.J.'s three sons before moving into her own apartment on July 4, 2008. J.J.'s apartment was to the right of a flight of stairs; L.M.'s apartment was to the left.

About 10:00 p.m., J.J.'s oldest son, G.J., then seven, went to bed without removing his clothes. The door to his room was the first of three bedroom doors opening into the apartment's hallway and had a sign with G.J.'s name; his room evinced his boyish interests. G.J.'s aunt, L.M., was in the apartment; she left about 10:30 after cautioning J.J. to lock the door because L.M. was not comfortable with appellant in the vicinity.

As L.M. walked toward her own apartment from J.J.'s, appellant approached her from behind. She thought he might have been waiting for her to leave J.J.'s apartment. He asked her, "Can I roll with you?," which she understood as a sexual proposition. She said no, went inside her apartment, and refused to answer the door when he rang.

After L.M. left, J.J. fell asleep on the couch in her living room without locking her apartment door. G.J. awoke around

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

midnight to find appellant lying sideways at the foot of G.J.'s bed. Appellant moved closer to G.J., reached up, and touched G.J.'s genitals over his clothing. He then spread G.J.'s legs, lowered his face toward G.J.'s crotch, and tried to remove G.J.'s pants.

G.J. kicked appellant off the bed and ran to the living room to wake J.J. and tell her appellant was in the apartment. J.J. screamed at appellant to leave. Appellant sat down in a chair and asked repeatedly where "the blond girl" was. J.J. called appellant's uncle's apartment and told appellant's cousin to come and get appellant. After appellant was removed, J.J. locked the door. Appellant said he needed his shoes and socks, which he had left in G.J.'s room. J.J. retrieved them and locked her door again.

J.J. then called the police. She testified that, at this point, G.J. revealed that appellant had touched his genitals. Police officers came and interviewed J.J. and G.J.

The officers then arrested appellant and charged him with burglary and second-degree criminal sexual conduct. He exercised his *Miranda* rights and did not provide a statement. Appellant later declined a guilty-plea offer from the state and proceeded to a court trial. Appellant did not notify the state of any defense and, at trial, said he was not relying on an intoxification defense.

The state's case-in-chief included testimony from G.J., J.J., and the officers involved in the investigation. Appellant testified in his own defense. He acknowledged being in J.J.'s apartment that night but denied entering G.J.'s room or having any contact with G.J. He testified that: (1) his uncle and cousin had previously had sex with L.M. in exchange for crack cocaine; (2) on July 29, L.M. agreed to have sex with him for money and he tried to convince her to let him pay with crack;

(3) L.M. took him into J.J.'s apartment and J.J.'s bedroom, where appellant and L.M. kissed and touched each other sexually; (4) appellant, intoxicated and disappointed with the progress of their sexual contact, fell asleep; (5) when he woke up, L.M. was gone; (6) more than $100 was missing from appellant's pocket; and (7) he asked J.J. about the missing money when she discovered him in the apartment.

The state called L.M., who denied that she (1) ever had had sex with anyone for money; (2) ever used crack; (3) let appellant into J.J.'s apartment on July 29; or (4) saw appellant again that night after she refused his offer of sex and entered her own apartment.

During closing arguments, the state and the district court addressed whether the intent element of the criminal-sexual-conduct count could be met in light of a good-faith, accidental mistake about whom the actor was touching sexually. Appellant argued that testimony about the sexual contact with G.J. had been fabricated as a distraction from appellant's allegations about L.M. and the stolen money.

The district court found that appellant's claim of no contact with G.J. was not credible and that L.M.'s testimony that she did not consent to have sexual contact with appellant that night was credible. The district court found that (1) appellant probably intended to have sexual contact with L.M. when he entered J.J.'s apartment; (2) appellant's sexual intent when touching G.J. was clear from both the nature of the act itself and appellant's plainly stated intent to enter the apartment for sex; and (3) appellant's sexual intent existed regardless of "[w]hatever role drunkenness may have played."

Appellant was found guilty of burglary and second-degree criminal sexual conduct

predicated on his commission of that crime inside J.J.'s apartment.

## ISSUES

I. Does the intent element of second-degree criminal sexual conduct, as defined in Minn.Stat. § 609.343, subd. 1(a) (2006), require the state to prove that the defendant acted with sexual or aggressive intent and intended a particular result?

II. Was the evidence sufficient to establish the intent element of second-degree criminal sexual conduct, when the sexual contact involved a person other than the intended victim?

III. Was the evidence sufficient to support the district court's conclusion that intoxication did not provide a defense to appellant's actions under Minn.Stat. § 609.075 (2006)?

## ANALYSIS

■■■ The first two issues require an interpretation of Minn.Stat. § 609.343, subd. 1(a). Statutory interpretation is a question of law reviewed de novo. *State v. Colvin*, 645 N.W.2d 449, 452 (Minn.2002). When a statute is unambiguous, this court will apply its plain meaning. *State v. Al–Naseer*, 734 N.W.2d 679, 684 (Minn.2007).

■■■ When reviewing the sufficiency of the evidence to support a conviction, this court determines whether "the facts in the record and the legitimate inferences drawn from them would permit the [fact-finder] to reasonably conclude that the defendant was guilty beyond a reasonable doubt." *Davis v. State*, 595 N.W.2d 520,

525 (Minn.1999). The record is viewed in a light favorable to the verdict. *State v. Miles*, 585 N.W.2d 368, 372 (Minn.1998). Review is the same for trials in which the district court sits as the fact-finder. *Davis*, 595 N.W.2d at 525.

## I.

■■■ Appellant does not dispute the finding that he mistakenly had sexual contact with someone other than the intended person. He argues that this finding negates a conclusion that he met the intent element of Minn.Stat. § 609.343, subd. 1(a) (providing that person is guilty of second-degree criminal sexual conduct if person "engages in sexual contact with another person" who "is under 13 years of age" and person "is more than 36 months older than the complainant"). "[M]istake as to the complainant's age is not a defense." *Id.* Sexual contact is defined to include certain enumerated acts committed "with sexual or aggressive intent." Minn.Stat. § 609.341, subd. 11(a) (2006) (defining "sexual contact" as used in Minn.Stat. § 609.343, subd. 1(a)). The enumerated acts include "the intentional touching by the actor of the complainant's intimate parts, or . . . the touching of the clothing covering the immediate area of the intimate parts." *Id.*, subd. 11(a)(i) and (iv).

Appellant does not challenge the district court's findings that G.J. was under 13 years of age, that appellant was more than 36 months older than G.J., and that appellant touched the clothing covering the immediate area of G.J.'s intimate parts.[1] Appellant argues instead that he did not act

1. Appellant's defense at trial rested on his assertion that no contact with G.J. occurred. The district court did not credit this assertion, and appellant does not challenge this aspect of the conviction. *See State v. Pendleton*, 759 N.W.2d 900, 909 (Minn.2009) (stating that appellate courts defer to fact-finder's credibility determinations). Although appellant's tri-

al defense did not rest on the intent issues he raises on appeal, those issue were addressed by the parties in closing argument and by the district court in its findings and conclusions of law. The state does not argue on appeal that the issue has been waived. We therefore conclude that it is properly preserved for appellate review.

with intent as that term is used in Minn. Stat. § 609.341, subd. 11(a). In relevant parts of the statute, the term is used twice.

First, the state is required to show that a defendant acted with "sexual or aggressive intent." Minn.Stat. § 609.341, subd. 11(a). Because "sexual" and "aggressive" are stated as alternatives, either is sufficient. *See State v. Ahmed,* 782 N.W.2d 253, 256 (Minn.App.2010) (stating that aggressive intent alone is sufficient). Absent any allegation of aggressive intent, the state must show "sexual intent." "Sexual intent" is not defined in the statute; therefore we construe it "according to [its] common and approved usage." Minn.Stat. § 645.08(1) (2008). In common usage, an act is committed with sexual intent when the actor perceives himself to be acting based on sexual desire or in pursuit of sexual gratification. Sexual intent must be established to avoid criminalizing contact that is accidental or that serves an innocuous, non-sexual purpose. *See State v. Vick,* 632 N.W.2d 676, 691 (Minn.2001) (stating that circumstances of sexual contact "negate[d] the possibility of an innocent explanation such as accidental touching or touching in the course of caregiving").

But a showing of sexual intent does not require direct evidence of the defendant's desires or gratification because a subjective sexual intent typically must be inferred from the nature of the conduct itself. *See State v. Fardan,* 773 N.W.2d 303, 321 (Minn.2009) (stating that intent is "an inference drawn by the [fact-finder] from the totality of the circumstances"); *see, e.g., Vick,* 632 N.W.2d at 691 (stating that contact described "clearly permits the inference" that defendant acted with sexual intent). Appellant's conduct with G.J. supports the inference that he was acting with sexual intent within the meaning of Minn.Stat. § 609.341, subd. 11(a).

Second, the state must show that appellant's act was the "intentional touching of ... the intimate parts" or "the clothing covering the immediate area of the intimate parts" included in Minn.Stat. § 609.341, subd. 11(a)(i) and (iv), as two instances of sexual contact. The other instances of sexual contact presented in the statute are acts in which the defendant effects, through some form of coercion, the touching of the intimate parts of himself, the complainant, or a third person. *Id.* subd. 11(a)(ii-iii).[2] Thus, all the proscribed instances of sexual contact involve a touching of intimate body parts that occur because of an intentional act of the defendant: the proscribed acts entail intentional contact either performed or coerced by the defendant to effect a specific result, namely, intimate contact. We conclude that, to establish sexual contact, the statute requires a showing that the defendant intended intimate contact to occur.[3]

We thus construe Minn.Stat. § 609.343, subd. 1(a) to define a "specific intent" crime. That term has been defined as either requiring something more than recklessness or negligence or requiring

---

**2.** Instances of sexual contact have been amended to add "intentional[ly] touching" the complainant's body or clothing with seminal fluid or sperm. Minn.Stat. § 609.341, subd. 11(a)(v) (Supp.2009). The addition is not relevant to this discussion of Minn.Stat. § 609.341, subd. 11(a) (2006).

**3.** We note that, when the defendant performs the intimate touching, the intent is probably sexual; when the defendant coerces the intimate touching, the intent is probably aggressive. While this is not essential, *e.g.,* a defendant could coerce the touching of another for the defendant's own gratification or engage in intimate contact with a purely aggressive intent, the parallel supports our conclusion that the statute requires a showing that the defendant had a sexual or aggressive intent that intimate contact occur.

proof that the defendant intended a specific result. *See State v. Stevenson,* 637 N.W.2d 857, 861 (Minn.App.2002) (holding that language "knowing or having reason to know" in Minn.Stat. § 609.3451, subd. 1(2) (2000) reveals legislature's desire to define crime as specific intent crime), *aff'd on other grounds,* 656 N.W.2d 235 (Minn. 2003); *State v. Charlton,* 338 N.W.2d 26, 30 (Minn.1983) (stating that specific intent requires person to have purpose or conscious desire to cause criminal result). Either definition is satisfied by our construction of the plain language: sexual contact does not include conduct that is merely reckless or negligent and sexual contact requires that the defendant intend the specific result of touching intimate body parts.

The state was required to prove that appellant was acting based on sexual desire or in pursuit of sexual gratification ("with sexual intent") and that he intended the touching of the clothing covering the immediate area of intimate parts. *See* Minn.Stat. §§ 609.341, subd. 11(a), 609.343, subd. 1(a).

## II.

■ Appellant concedes his intent with respect to L.M., whom he did not touch, and his touch with respect to G.J., whom he claims he had no intent to touch but argues that, because his intent and his act were directed at different persons, he did not violate Minn.Stat. § 609.343, subd. 1(a).

■ When a defendant intended to injure one person but actually injured another, he may be convicted under the doctrine of transferred intent. *State v. Cruz–Ramirez,* 771 N.W.2d 497, 507 (Minn.2009). The doctrine applies when a defendant claims that "bad aim" or a mistaken identity resulted in the crime affecting a victim other than the intended victim. 1 Wayne R. LaFave, *Substantive Criminal Law*

§ 6.4(d), at 475–78 (2d ed.2003); *see also* Model Penal Code § 2.03(2) (2001) (stating that element of "purposely or knowingly causing a particular result" is established if actual result differs "only in the respect that a different person ... is injured or affected"). The doctrine is incorporated in statutes pertaining to murder. *See, e.g.,* Minn.Stat. § 609.185(a)(1) (2006) (defining murder as causing death of human being "with intent to effect the death of the person *or another*" (emphasis added)). The doctrine is also applied to ordinary assault. *See, e.g., State v. Livingston,* 420 N.W.2d 223, 229 (Minn.App.1988) (citing *State v. Jankowitz,* 175 Minn. 409, 410, 221 N.W. 533, 533–34 (1928) (rejecting defendant's argument that he could not be convicted of bodily harm of woman simply because he had intended to harm her husband instead)).

While research has uncovered no published cases in any jurisdiction applying the transferred-intent doctrine in the context of criminal sexual conduct, we conclude that criminal sexual conduct is sufficiently similar to ordinary assault for transferred intent to apply. Ordinary assault is the intentional infliction of bodily harm; sexual assault is the intentional infliction of a particular type of bodily harm. *See, e.g.,* Minn.Stat. § 609.343, subd. 1(a). "Sexual assault" is a common term for many of the acts referred to as statutory criminal sexual conduct: certain criminal sexual acts are essentially a particular form of assault. Appellant's argument is essentially that proposed and rejected in *Jankowitz.* We therefore hold that proof that a defendant intended some manner of criminal sexual conduct with a different victim satisfies the intent element of Minn. Stat. § 609.343, subd. 1(a).

Appellant argues that, because his intended victim was an adult and he had sexual contact with someone under 13 by

mistake, he can be convicted only of fifth-degree criminal sexual conduct under Minn.Stat. § 609.3451 (2006) (engaging in nonconsensual sexual contact), not of second-degree criminal sexual conduct, *see* Minn.Stat. § 609.343, subd. 1(a) (engaging in sexual contact with someone who is under 13 and more than 36 months younger than the actor). He relies on LaFave, *supra,* § 5.6(c) at 404–05 (stating that, when mistake of fact results in commission of greater crime, defendant may be convicted of offense he would have been guilty of if mistake had not occurred). But appellant's reliance is misplaced: the treatise also notes that the defense is inapplicable if the defendant's mistake related to an element of the crime to which strict liability applies. *Id.* at 404. Here, the statute expressly precludes mistake as to the complainant's age as a defense. *See* Minn. Stat. § 609.343, subd. 1(a). Appellant sexually touched a person without knowing the person's age. The age element of the crime does not include a separate intent requirement, and the intent requirement is expressly stated elsewhere. *See State v. Skapyak,* 702 N.W.2d 331, 334 (Minn.App. 2005) (declining to add mens rea requirement to age element when separate mens rea element already exists for crime at issue), *review denied* (Minn. Oct. 18, 2005); *see also* LaFave, *supra,* § 5.1(d) at 338 (stating that mens rea may differ for separate elements of crime). We decline to add to the statute a requirement that a defendant intend sexual contact with a person under 13.

Moreover, the harm suffered by a child victim of criminal sexual conduct is similar to that suffered by an adult victim. The harm done to the actual victim need not be identical to the harm that would have been suffered by the intended victim for the doctrine of transferred intent to apply. *See State v. Merrill,* 450 N.W.2d 318, 323 (Minn.1990) (discussing transferred intent in context of death of person and death of fetus and concluding harm was sufficiently similar to invoke transferred intent).

The evidence of appellant's intent with respect to L.M. is sufficient to establish his intent with respect to G.J. and satisfies the intent requirement of second-degree criminal sexual conduct.[4]

### III.

Appellant also argues that the district court committed an error of law in determining that the intoxication defense does not apply.[5]

Even though the district court surmised that, because second-degree criminal sexual conduct is not a specific-intent crime, the intoxication defense might not apply, it concluded that "intoxication certainly did

---

4. Having reached this conclusion, we do not address appellant's argument that his burglary conviction could not stand if his criminal-sexual-conduct conviction were reversed.

5. The state correctly asserts that, at trial, appellant expressly denied raising an intoxication defense, claiming instead that the alleged sexual contact with G.J. had not occurred. When a defendant denies that conduct occurred, the intoxication defense is unavailable because he has not placed intent at issue. *See State v. Torres,* 632 N.W.2d 609, 616 (Minn.2001) (including as requirement for defendant to receive jury instruction on intoxication defense that defendant "must offer intoxication as an explanation for his actions"). But the intoxication defense may be implied if evidence of intoxication is "so overwhelming as to constitute the effective offer" of the defense. *Id.* at 617. Here, the district court doubted appellant's assertions that he was not relying on the defense and addressed the defense in its findings. Because we conclude that the district court treated the defense as having been raised, we presume that the evidence of intoxication was sufficient to permit its consideration.

not eliminate [appellant's] ability to form the requisite sexual intent, to which, in fact, [appellant] testified in some detail." Thus, contrary to appellant's contention, the district court did consider the intoxication defense. That consideration was appropriate because, as discussed above, second-degree criminal sexual conduct is a specific-intent crime. "[W]hen a particular intent or other state of mind is a necessary element . . ., the fact of intoxication may be taken into consideration in determining such intent or state of mind." Minn.Stat. § 609.075 (2006). Here, the intent element of second-degree criminal sexual conduct is a "particular intent or other state of mind" and the fact of intoxication was properly considered.

## DECISION

A charge of second-degree criminal sexual conduct under Minn.Stat. § 609.343, subd. 1(a), requires the state to prove that the defendant acted with sexual or aggressive intent and intended intimate contact to occur. When it can be shown that the defendant intended criminal sexual conduct with a person other than the complainant in a second-degree criminal-sexual-conduct case, the intent element may be satisfied by the doctrine of transferred intent. The district court found the intent element to be satisfied beyond a reasonable doubt on this basis, and the evidence of intoxication did not defeat a showing of appellant's intent.

**Affirmed.**