*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1792**

State of Minnesota,
Respondent,

vs.

Jay Dean Uldrych,
Appellant.

**Filed March 9, 2015
Affirmed
Toussaint, Judge**[*]

Hennepin County District Court
File No. 27-CR-12-8907

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jean Burdorf, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Gary A. Gittus, Gittus Law Offices, Rochester, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Chutich, Judge; and Toussaint, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**TOUSSAINT**, Judge

Appellant challenges his convictions of second-degree criminal sexual conduct, arguing that: (1) the district court erred in excluding expert witness testimony about a sleep disorder that he asserts is relevant to his defense; (2) the evidence is insufficient to support the jury's verdict; and (3) his trial counsel was ineffective. We affirm.

## DECISION

### I.

Appellant Jay Dean Uldrych argues that the district court erred by excluding his expert witness from testifying about a sleep disorder diagnosis known as sexsomnia. The admissibility of expert testimony is governed by Minn. R. Evid. 702. That rule permits admission of expert testimony if: "(1) the witness is qualified as an expert; (2) the expert's opinion has foundational reliability; (3) the expert testimony is helpful to the jury; and (4) if the testimony involves a novel scientific theory, it must satisfy the *Frye-Mack* standard." *State v. Obeta*, 796 N.W.2d 282, 289 (Minn. 2011). At issue here is the final factor, whether the doctor's testimony regarding appellant's sexsomnia diagnosis satisfies the *Frye-Mack* standard. The parties do not dispute that this diagnosis required consideration of novel scientific evidence that warranted a *Frye-Mack* hearing.

The *Frye-Mack* standard contains two prongs. *State v. Roman Nose,* 649 N.W.2d 815, 818 (Minn. 2002). The first prong, whether the offered evidence is "generally accepted in the relevant scientific community," is a question of law that we review de novo. *Goeb v. Tharaldson,* 615 N.W.2d 800, 814-15 (Minn. 2000). The second prong,

whether the evidence has "foundational reliability," focuses on whether the offering party has "establish[ed] that the test itself is reliable and that its administration in the particular instance conformed to the procedure necessary to ensure reliability." *Id.* at 814 (quotation omitted). We review the second prong under an abuse-of-discretion standard. *Id.* at 815.

At the *Frye-Mack* hearing, appellant's expert testified that a person diagnosed with sexsomnia will exhibit sexual behavior while sleeping, that this diagnosis is made after the subject undergoes a sleep study and several other tests, that the diagnosis is often related to sleep apnea and other sleep disorders, and that, based on his review of appellant's sleep study and supporting materials, the incident that formed the basis for the criminal charges resulted from a sexsomnia-related episode. Appellant argues that the evidence submitted to the district court demonstrates that the sexsomnia diagnosis has been documented in numerous articles and studies, that the research provides ample guidance regarding the nature of the disorder and its diagnosis, and that this evidence provides adequate foundation for the admission of the expert testimony. The district court determined that there was insufficient foundational reliability to admit the evidence at trial because the expert did not comply with relevant safeguards and controls in formulating his diagnosis. We agree.

The purpose of the foundational reliability prong is to demonstrate that the evidence "is reliable in that particular case." *Doe v. Archdiocese of St. Paul,* 817 N.W.2d 150, 168 (Minn. 2012) (stating that foundational reliability analysis under Rule 702 and *Frye–Mack* is nearly identical). This prong asks us to consider "whether the laboratory

3

conducting the tests in the individual case complied with appropriate standards and controls." *Roman Nose*, 649 N.W.2d at 819. In this case, the literature that appellant submitted to the district court recommends that medical examiners comply with several tests and procedures to ensure an accurate sexsomnia diagnosis. These tests include narcotics screening, a sleep study conducted over multiple nights with the subject's normal bed partner, a daytime sleep latency test, general medical evaluation, a sleep disorder questionnaire, clinical interview of the subject and his or her bed partner, clinical evaluation for specific physical signs of sleep disorders, a neurological and psychiatric evaluation, and a neuroimaging. The record demonstrates that the expert did not substantially conform to these controls before making his diagnosis. Appellant's sleep study, which was performed by a different physician, lasted for less than seven hours, without his normal bed partner. And the expert did not conduct formal medical evaluations, neurological screenings, or clinical interviews with appellant or his bed partner. The district court issued a thorough and well-reasoned order that considered these shortcomings. We conclude that its decision to exclude the testimony based on these factors was not an abuse of its discretion.[1]

## II.

Appellant also argues that the evidence is insufficient to uphold the jury's verdict that he was guilty of second-degree criminal sexual conduct. When reviewing a claim of insufficient evidence, we conduct "a painstaking analysis of the record to determine

---

[1] Because we conclude that it was not an abuse of discretion to exclude the testimony for lack of adequate foundational reliability, we do not address whether the sexsomnia diagnosis is generally accepted by the scientific community.

4

whether the evidence, when viewed in the light most favorable to the conviction," is sufficient to allow the jurors to reach a guilty verdict. *State v. Ortega,* 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted). Here, appellant contends that the evidence is insufficient to demonstrate that he committed the sexual contact with "sexual or aggressive intent." *See* Minn. Stat. § 609.343, subds. 1(b), (g) (2012) (defining crimes of second-degree criminal sexual conduct with which appellant was charged); Minn. Stat. § 609.341, subd. 11(a) (2012) (stating that sexual contact must be made with "sexual or aggressive intent").

Generally, intent is established by circumstantial evidence. *State v. Smith*, 825 N.W.2d 131, 136 (Minn. App. 2012), *review denied* (Minn. Mar. 19, 2013). We apply a two-step analysis in reviewing a conviction based upon circumstantial evidence. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). First, we identify the circumstances proved, deferring to the jury's acceptance or rejection of evidence in support of those circumstances. *State v. Hanson*, 800 N.W.2d 618, 622 (Minn. 2011). Second, we examine independently the reasonable inferences that could be drawn from the circumstances. *Id.* To uphold appellant's convictions, the circumstances proved must be consistent with the reasonable inference that appellant is guilty and inconsistent with any other rational inferences. *Id.*

At trial, the complainant, K.U., testified that appellant asked her to lie in his bed, that he grabbed her and held her tightly, that he touched her breast both above and under her clothing, and that he wrapped his legs over her to prevent her from moving. K.U. also testified that appellant stopped her from leaving multiple times. Appellant argues

5

that K.U.'s testimony is insufficient to convict because her testimony was inconsistent with her description of the hotel room where the incident occurred and because the evidence could also demonstrate that the sexual contact occurred after he fell asleep.

But K.U.'s testimony was consistent with both the statement that she gave to a forensic interviewer and with a letter that she wrote to her parents describing the event. Her testimony is consistent only with the inference that appellant was awake during the entire incident. And a review of the record demonstrates that her testimony is also consistent with the layout of the hotel room where the contact occurred. The jury's verdict indicates that it believed K.U., and we defer to the jury's credibility determinations. *See State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989) (stating that on review, this court assumes that the jury "disbelieved any evidence to the contrary").

Likewise, the circumstances proven by K.U.'s testimony are consistent only with the inference that appellant acted with sexual intent within the meaning of Minn. Stat. § 609.341, subd. 11(a). "[A]n act is committed with sexual intent when the actor perceives himself to be acting based on sexual desire or in pursuit of sexual gratification." *State v. Austin*, 788 N.W.2d 788, 792 (Minn. App. 2010), *review denied* (Minn. Dec. 14, 2010). The purpose of establishing sexual intent is to ensure that contact that is "accidental" or "innocuous" is not criminalized. *Id.* But sexual intent need not be proven by direct evidence of a person's desires or gratifications; it may instead be inferred by the nature of the conduct itself. *Id.* Here, K.U.'s testimony demonstrates that appellant touched her breast multiple times, that during the contact appellant used his legs to restrain her, and that appellant deliberately prevented her from leaving. These

circumstances exclude the possibility of an innocent explanation for the sexual contact. *See State v. Vick*, 632 N.W.2d 676, 691 (Minn. 2001) (concluding that nature of touching negated possibility of innocent explanation). We therefore conclude that there is sufficient evidence to uphold the jury's verdict.

### III.

Finally, appellant argues that his trial counsel was ineffective for failing to enforce subpoenas against: (1) a physician who treated appellant for sleep disorder and (2) his children, who were present in the hotel room when the incident occurred, but lived out-of-state at the time of trial. We examine a claim for ineffective assistance of counsel under a two-pronged analysis. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *State v. Bobo,* 770 N.W.2d 129, 137 (Minn. 2009). First, we consider whether counsel's representation "fell below an objective standard of reasonableness." *Fields v. State,* 733 N.W.2d 465, 468 (Minn. 2007) (quotation omitted). Second, we determine whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (quotation omitted). We review ineffective-assistance-of-counsel claims de novo. *Opsahl v. State,* 677 N.W.2d 414, 420 (Minn. 2004). But on review, "[t]here is a strong presumption that counsel's performance was reasonable." *Boitnott v. State,* 631 N.W.2d 362, 370 (Minn. 2001).

Generally, the decisions regarding what evidence to present are matters of trial strategy, which this court does not review in a claim for ineffective assistance. *Andersen v. State*, 830 N.W.2d 1, 13 (Minn. 2013). Thus, trial counsel retains the discretion to

7

determine what witnesses not to call, even when those witnesses allegedly possess information that is relevant to the defendant's theory of the case. *State v. Loving*, 775 N.W.2d 872, 882 (Minn. 2009). And here, the record indicates that trial counsel made several attempts to enforce the subpoenas. We cannot conclude that these efforts were objectively insufficient. Appellant's ineffective-assistance claim therefore fails.

Moreover, based on the record before us, we cannot conclude that appellant suffered prejudice. We will not reverse a conviction for ineffective assistance of counsel based on mere speculation that the defendant was harmed by counsel's failure to call a witness. *State v. Morrison,* 298 Minn. 179, 180, 213 N.W.2d 629, 631 (1974). Instead, to demonstrate prejudice, appellant must prove "what evidence would have been presented through witness testimony, or how the result of the proceedings would have been different because of the witness testimony." *Loving*, 775 N.W.2d at 882. Based on the evidence in the record, appellant's children were asleep when the incident occurred, and his physician would have been able to testify only that appellant suffered from sleep apnea. Appellant does not explain how the testimony of these witnesses would differ from the evidence contained in the record or establish how this testimony would assist his defense. For this reason as well, we reject appellant's ineffective assistance claim.

**Affirmed.**