*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0816**

State of Minnesota,
Respondent,

vs.

Charles Kihanya,
Appellant.

**Filed August 3, 2015
Affirmed
Minge, Judge[*]**

Winona County District Court
File No. 85-CR-13-1638

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Karin L. Sonneman, Winona County Attorney, Nelson Rhodus, Assistant County Attorney, Winona, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Johnson, Judge; and Minge, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**MINGE**, Judge

A jury found appellant Charles Kihanya guilty of two counts of second-degree criminal sexual contact with his stepdaughter. Kihanya argues that the district court erred by admitting the girl's out-of-court statements and that without these statements, there was insufficient evidence to convict him. He further argues that with respect to the second count, the evidence did not show that his contact with the victim was intentional. Because the district court did not plainly err in admitting the evidence and because there was sufficient evidence for the jury to find Kihanya guilty of both counts, we affirm.

## FACTS

At the time of the charged incidents, appellant Kihanya was living in Goodview, Minnesota, with his wife, their two children, and his wife's two children from a prior relationship: a boy and a girl, A.E. During a visit with an uncle's family in North Dakota in July 2013, A.E. told a 12-year-old female cousin, H.N., that Kihanya touches her. A.E. told H.N. not to tell anyone and ran to another room. H.N. asked A.E.'s brother, who was also visiting, whether he had seen any contact. He confirmed that he had. H.N. called her mother, S.N., at work. S.N. promptly returned home. A.E. initially told S.N. that no abuse had occurred, but then started crying and told her that Kihanya had touched her. S.N. brought A.E. to the local police station where they spoke with an investigator who arranged for A.E. to interview with a specialist at Red River Children's Advocacy Center. Having learned that A.E.'s brother was a witness, police arranged for him to also be interviewed at the center.

2

The forensic interviewer at the Red River Center conducted a videotaped, one-hour conversation with A.E. A.E. told the interviewer that she was there because of "what [her] stepdad does," and she wrote, "He touches me in places he shouldn't." She clarified that she meant her "privates," which she uses to "go pee." She explained that Kihanya uses his finger, that it happens at home, and that he had done so several times, beginning when she was eight years old. The most recent contact occurred on an evening when the family was moving to another residence. A.E. said that she was sleeping on a couch and woke to Kihanya standing next to her, moving his finger in her crotch under her clothes. A.E. also disclosed an incident that her brother had witnessed when Kihanya came up behind her, "grab[bed]" her privates over her clothes, and pulled her to him. A.E. said that Kihanya told her not to tell anyone. She was afraid to tell her mother or grandmother about Kihanya's conduct because she thought they would become angry. Further inquiry revealed that A.E. had earlier told a friend, A.C., that Kihanya had been touching her inappropriately.

Kihanya was charged with two second-degree criminal sexual offenses under Minnesota Statutes section 609.343, subdivision 1(a) (2012). Count I addresses the couch incident; count II relates to the grabbing-from-behind incident.

Before trial, the state noted A.E.'s difficulty discussing the abuse and informed defense counsel that it intended to introduce A.E.'s videotaped forensic interviews under rule 807 or rule 801(d)(1)(B) of the Minnesota Rules of Evidence. Kihanya's counsel did not object, on the condition that A.E. would be available for cross-examination. The jury

saw the video of her Red River Center forensic interview. A.E. testified the following day.

When A.E. testified, she briefly described her visit with her uncle's family and recounted that she told her cousin H.N. that "really bad stuff" was "going on at home." She then had difficulty testifying. After a brief recess, she stated that she spoke with her cousin's mother, S.N., then told the same things to police, and later went to an interview. When asked about what happened in her home, A.E. said that it involved Kihanya and that it was hard for her to talk about it because she was scared. During cross-examination, A.E. confirmed a few details about the grabbing-from-behind incident, affirming that her brother "saw [Kihanya] reach over, put his hands on [her] private area."

Police officers and family members also testified. A.E.'s brother discussed his own forensic interview, which the jury had also seen. He said that he only witnessed an incident in which A.E. was dancing to music in their living room and their stepfather began dancing behind her, reached over her shoulder, and "grabbed her" vaginal area for between two and five seconds. Seeing this happen "stunned" him. The brother said that he could not see Kihanya's expression, but his sister had an "oh my God what's going on kind of face" and she stopped dancing and walked away. The brother affirmed his statement in the video interview that Kihanya had intentionally touched A.E. while "trying to make it seem like nothing [was] going on." On cross-examination, he also stated: "Well it didn't look accidentally. It looked sort of on purpose. . . . I'm not sure. I'm not really sure." He then repeated that he did not think it was an accident and that Kihanya did not trip and fall onto A.E.

4

The last witness was A.E.'s friend A.C. who testified that A.E. told her that Kihanya "was touching her in inappropriate spots." She said that A.E. had first disclosed these allegations to her over two years earlier and seemed very nervous and scared. A.E. later told A.C. about other incidents. The prosecution asserted that A.C.'s testimony about A.E.'s confidences were prior consistent statements, admissible under rule of evidence 801(d)(1)(B). Kihanya did not object to this testimony.

The state's closing argument relied heavily on the two forensic interviews both to bolster A.E.'s and her brother's credibility and as substantive evidence to establish the state's version of events. The jury found Kihanya guilty of both counts of second-degree criminal sexual contact. The court sentenced him to a total of 84 months for the two crimes, but it stayed execution and placed him on supervised probation for up to 25 years.

Kihanya appeals, requesting a new trial or reversal of both convictions.

## D E C I S I O N

### I.

The first issue in this appeal is whether the district court should have excluded A.E.'s forensic-interview video, as well as the testimony of A.E.'s friend A.C., recounting A.E.'s prior out-of-court statements. Kihanya did not object to this evidence at trial.

The district court has sound discretion over evidentiary matters. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). We will not reverse its evidentiary rulings unless an appellant shows both a clear abuse of discretion and resulting prejudice. *Id.* If the appellant does not object to an error at trial, we apply the plain-error standard. *State v.*

5

*Griller*, 583 N.W.2d 736, 740 (Minn. 1998). Under that standard we only reverse if there is error which is plain and affected the defendant's substantial rights and reversal is necessary "to ensure fairness and the integrity of the judicial proceedings." *Id.* The issue on appeal is whether the presentation of this evidence violated the plain-error standard.

### A.     A.E.'s Interview

Kihanya contends that A.E.'s interview video is inadmissible hearsay. Hearsay is a statement made by a declarant outside of the trial or hearing and is offered to prove that the matter asserted in the statement is true. Minn. R. Evid. 801(c). Hearsay is not admissible as substantive evidence unless it falls into an exception under the rules of evidence. Minn. R. Evid. 802; *State v. Ashby*, 567 N.W.2d 21, 26 (Minn. 1997).

### 1.     Rule 807 Exception

Rule of evidence 807 provides an exception to the hearsay rule for statements not specifically covered by the hearsay exceptions in rules 803 or 804 but that have "equivalent circumstantial guarantees of trustworthiness." Minn. R. Evid. 807. To determine whether a statement has sufficient guarantees of trustworthiness, we review the totality of the circumstances. *State v. Martinez*, 725 N.W.2d 733, 737 (Minn. 2007) (applying this analysis to rule 803(24), the predecessor of rule 807). Analyzing rule 807 here, we assume that A.E.'s interview video was hearsay.

Kihanya argues that the statements in A.E.'s interview do not comport with indicia of reliability set forth in the case of *State v. Ortlepp*, 363 N.W.2d 39 (Minn. 1985). There, the court identified several factors that made a prior statement "particularly reliable." *Id.* at 44. These include the declarant admitting making the prior statement and being

6

available for cross-examination and the statement being taped, consistent with other evidence, and against the declarant's penal interest. *Id.* The *Ortlepp* factors are not a closed list or strictly required. *Martinez*, 725 N.W.2d at 738. Other "[r]elevant factors generally considered" include whether the statement was given voluntarily, under oath, and subject to penalty of perjury, the declarant's relationship to the parties, the declarant's motivation to make the statement, the declarant's personal knowledge, and the character of the declarant for truthfulness and honesty. *State v. Davis*, 820 N.W.2d 525, 537 (Minn. 2012).

The supreme court has also recognized factors relevant to admission of forensic interviews in the parallel context of Minnesota Statutes section 595.02, subdivision 3. *In re Welfare of L.E.P.*, 594 N.W.2d 163, 170 (Minn. 1999). That statute creates an exception to the hearsay bar for statements made by child sex-abuse victims younger than ten. Minn. Stat. § 595.02, subd. 3 (2012). Although A.E. had just recently turned ten when she testified at trial and the statute is not directly applicable in this appeal, such caselaw identifies factors that are helpful. They include reliability considerations, "spontaneity, consistent repetition, [the child's] mental state . . . , use of terminology unexpected of a child of similar age," as well as the temporal proximity to the events described, and whether the interviewer "had a preconceived idea of what the child would say" or asked leading or suggestive questions. *L.E.P.*, 594 N.W.2d at 170.

The interview here was videotaped, so there is no question about what A.E. said or how she said it. The videotape also shows that the interviewer was extremely sensitive to eliciting truthful answers and avoided planting ideas in A.E.'s mind. And there is no

7

evidence that anyone had prepared A.E. for the interview or that A.E. had any motive to lie. To the contrary, A.E. feared that her statements would bring a negative response from her relatives, on whom she depends. The interview statements also do not contradict other evidence. A.E.'s brother witnessed and testified to one incident of touching. To the extent A.E.'s video-interview statements went beyond her trial testimony, Kihanya had the opportunity to cross-examine A.E. about them. Despite her difficultly answering open-ended questions on direct examination, A.E. was able to respond to yes-or-no questions on cross-examination. Kihanya simply chose to limit his questioning. The circumstances of the forensic interview and the trial offer indicia of reliability supporting the district court's exercise of discretion in admitting this evidence.

We note that the district court did not make an express reliability finding here. The district court generally must make findings that show its reliability analysis under rule 807. *State v. DeRosier*, 695 N.W.2d 97, 105 (Minn. 2005). But findings on reliability are required only if the defendant objects to evidence being admitted. *Id.* (requiring "findings explicitly on the record unless there is a waiver, explicitly or by silence" (quotation omitted)). Kihanya never raised the issue at trial, so findings were unnecessary. We conclude that the district court did not plainly err by admitting A.E.'s forensic-interview video under rule 807 and that the plain-error standard for reversal is not met.

### 2. Rule 801(d)(1)(B)

The state also asserts that A.E.'s interview statements are admissible as non-hearsay under rule of evidence 801(d)(1)(B). Because the rule 807 exception is applicable, we do not decide the interview's admissibility under rule 801(d)(1)(B).

8

**B.    A.C.'s Testimony**

Next, we consider admissibility of friend A.C.'s testimony about what A.E. had told her.[1] Kihanya argues that A.C.'s testimony was hearsay and was not admissible under rule of evidence 801(d)(1)(B), the only grounds presented at trial. A.C. testified that A.E. had told her that Kihanya "was touching her in inappropriate spots." This testimony did not go beyond A.E.'s own testimony, which affirmed that Kihanya had touched her "private area." And unlike A.E.'s interview video, A.C.'s testimony was admitted after A.E. took the stand. The district court did not abuse its discretion by admitting this testimony as prior consistent evidence supporting A.E.'s credibility. Thus, we conclude that Kihanya has not met the plain-error standard.

**II.**

The next issue is whether the evidence was sufficient to find Kihanya guilty of both counts. The state has to prove each element of charged crimes beyond a reasonable doubt. *State v. Merrill*, 428 N.W.2d 361, 366 (Minn. 1988); *see also* U.S. Const. amends. V, XIV; Minn. Const. art. I, § 7. We examine whether the jury could reasonably conclude that the defendant was guilty of the charged offense. *State v. Combs*, 195 N.W.2d 176, 178 (Minn. 1972). We view the evidence in the light most favorable to the guilty verdict and assume that the jury disbelieved any testimony conflicting with this result. *State v. Daniels*, 361 N.W.2d 819, 826 (Minn. 1985).

---

[1] The state used A.C.'s testimony primarily to bolster A.E.'s credibility, but the district court admitted the testimony without any instruction against using it as substantive evidence of guilt.

As to the first count, which occurred when A.E. was sleeping on the couch, Kihanya argues that there was insufficient evidence of sexual contact in the physical sense. To prove the second-degree criminal sexual conduct charge, the state had to prove beyond a reasonable doubt that Kihanya engaged in sexual contact with the victim. Minn. Stat. § 609.343, subd. 1(a) (2012). Sexual contact may occur through "intentional touching . . . of the [victim's] intimate parts" or "clothing covering the immediate area of the intimate parts." Minn. Stat. § 609.341, subd. 11(a)(i), (iv) (2012). The definition of intimate parts "includes the primary genital area [and] groin." *Id.*, subd. 5 (2012). A.E. explained in her video interview that Kihanya touches her vaginal area and that she woke to his moving his finger against privates underneath her clothes. These statements were sufficient evidence to prove that Kihanya touched A.E.'s intimate parts, the count I offense.

As to the second count, arising from Kihanya touching A.E.'s vaginal area while she was dancing, Kihanya argues that the state failed to prove that his physical contact was intentional. He notes that A.E.'s brother was the only witness to provide a detailed description of the incident and was not completely sure that the touching was not an accident. Sexual contact requires "intentional touching" that is "committed with sexual or aggressive intent." *Id.*, subd. 11(a)(i). We have defined sexual intent as occurring "when the actor perceives himself to be acting based on sexual desire or in pursuit of sexual gratification." *State v. Austin*, 788 N.W.2d 788, 792 (Minn. App. 2010), *review denied* (Minn. Dec. 14, 2010). Mere accidental contact does not carry criminal liability under Minnesota Statutes section 609.341. *Id.*

Intent is generally proven by circumstantial evidence. *State v. Davis*, 656 N.W.2d 900, 905 (Minn. App. 2003), *review denied* (Minn. May 20, 2003). We apply a circumstantial evidence standard of review when the state proves an element of a crime through circumstantial evidence alone. *State v. Al-Naseer*, 788 N.W.2d 469, 474–75 (Minn. 2010). We first identify the circumstances proven, reviewing the direct evidence favorably to the verdict. *Id.* at 473. We then determine what inferences can reasonably be drawn from these circumstances. *Id.* at 473–74. And we decide whether the circumstances proved are "consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of his guilt." *State v. Stein*, 776 N.W.2d 709, 714–15 (Minn. 2010) (quotation omitted). A defendant's claim of other theoretically possible interpretations of events does not require us to reverse a conviction supported by circumstantial evidence. *State v. Tscheu*, 758 N.W.2d 849, 859 (Minn. 2008).

A.E.'s brother testified about Kihanya's conduct during the dancing incident. He said that Kihanya approached A.E. from behind, and reaching over her shoulder, grabbed her in her vaginal area for two to five seconds. He testified that A.E. had an "oh my God what's going on kind of face" and then walked away. This indicates that at a minimum she appeared surprised and upset. A.E. herself added that Kihanya "told [her] not to tell anyone." And the brother stated that the contact did not appear accidental and that Kihanya did not simply trip and fall into A.E. He both testified that he thought Kihanya had intentionally touched A.E. while trying to make it seem accidental and admitted on cross-examination that he was not completely sure.

Because the jury found Kihanya guilty, we assume that the jury believed the children's description of the event. *See Daniels*, 361 N.W.2d at 826. We nonetheless recognize that the jury could form its own inferences about Kihanya's intent and was not bound by the brother's mixed opinion. *See State v. Holbrook*, 305 Minn. 554, 557, 233 N.W.2d 892, 894 (1975) (deciding that a jury may accept some aspects of a witness's testimony while rejecting others); *Ruppert v. Yaeger*, 414 N.W.2d 419, 423 (Minn. App. 1987) (noting that the jury is entitled to reject opinion evidence).

Kihanya argues that under the circumstantial evidence standard of review, we cannot rule out a reasonable inference that his contact with A.E.'s vaginal area was merely accidental. But none of the physical acts that the brother described suggests an accident. Kihanya does not even attempt to explain how he could unintentionally stand behind his nine-year-old stepdaughter, stretch his arm over her shoulder, reach down to her vaginal area, and hold his hand there for two or more seconds. The jury had no reason to doubt that he understood where he placed his hand on A.E.'s body. His warning A.E. not to tell anyone also cuts against any suggestion of innocent mistake. And only conjecture could suggest that he had any purpose for his intentional touching besides sexual gratification. Because there is no rational hypothesis except that of guilt, we conclude that the evidence is sufficient to support the verdict on count II.

**Affirmed.**