*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0097**

State of Minnesota,
Respondent,

vs.

Wendell Anthony Greene,
Appellant.

**Filed November 23, 2015
Affirmed in part, reversed in part, and remanded
Smith, Judge**

St. Louis County District Court
File No. 69DU-CR-12-1941

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Presiding Judge; Stauber, Judge; and Klaphake, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**SMITH**, Judge

We reverse appellant's conviction of criminal sexual conduct in the second degree, count three, because there was insufficient evidence for the jury to convict appellant, and

---
[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

we therefore remand for resentencing. We affirm appellant's convictions of criminal sexual conduct in the first degree, count one, and criminal sexual conduct in the second degree, count two, and the postconviction court's summary denial of appellant's postconviction petition.

## FACTS

Appellant Wendell Anthony Greene appeals his convictions of three counts of criminal sexual conduct. Greene was charged with one count of criminal sexual conduct in the first degree in violation of Minn. Stat. § 609.342, subd. 1(a) (2010), and three counts of criminal sexual conduct in the second degree in violation of Minn. Stat. § 609.343, subd. 1(a) (2010). Counts one and two pertained to Greene's contact with a then ten-year-old girl, L.E.G., and counts three and four pertained to Greene's contact with a then nine-year-old girl, M.R.G. After a jury trial, Greene was found guilty on counts one, two, and three, and not guilty on count four. Because we reverse on count three, our factual summary is limited to the facts bearing on that conviction.

Greene met L.E.G. and M.R.G. when he was a referee and coach for youth basketball at the Salvation Army. Over time, the girls became close with Greene, seeing him as a sort of "uncle." Greene spent considerable time alone with L.E.G. and M.R.G., taking them to basketball practice, driving to parks, and picking them up from school.

On June 9, 2012, Greene took L.E.G. to Dairy Queen and Canal Park, and then stopped at his apartment with L.E.G. before bringing her home. When she arrived home, L.E.G. told her mother that Greene had licked her genitals while they were at his apartment. Within several days, the incident was reported to social services.

2

Subsequently, on June 12, 2012, Investigator Ryan Temple of the Duluth Police Department interviewed L.E.G. and M.R.G. Both interviews were recorded and later played at trial. L.E.G. stated that M.R.G. told her about an incident with Greene in the bathroom at Greene's apartment. L.E.G. told Investigator Temple that Greene was "supposedly giving [M.R.G.] a bath . . . and he was using his hand to scrub that (indicates), and he had a scrubber sponge and he started scrubbing it down." The video shows L.E.G. pointing to the vagina on a diagram of a girl. L.E.G. stated that after M.R.G's bath, Greene took a shower and asked M.R.G. to grab a towel for him, and M.R.G. saw "it" causing Greene to smile "a little bit."

Investigator Temple and M.R.G. discussed touches that M.R.G. does not like to get—she pointed to the butt, vagina, and chest on the diagram. When asked who touched her there, M.R.G. said "Wendell." M.R.G. stated that the touches happened on top of her clothing and that they made her feel "grossed out." M.R.G. also told Investigator Temple that Greene once bathed after she took a bath at his apartment and asked M.R.G. to bring him a towel, whereupon she saw his penis. M.R.G. said that Greene told her that he usually gets his own towel. M.R.G. stated that when she bathed, Greene stayed in the living room and that she dressed herself.

On June 13, Investigators Temple and Lisa Mickus interviewed Greene. The interview was recorded and played at trial. Greene confirmed that he knew L.E.G. and M.R.G. through his interactions with them as a basketball coach at the Salvation Army. Greene confirmed that M.R.G. came to his apartment once for the weekend at R.B.'s request. Greene stated that while there, M.R.G. took a bath because she "hadn't had a bath in a week." Greene said that he came into the bathroom because the water was too

3

warm and that he helped M.R.G. dry off. When asked if he could think of anything that M.R.G. would have thought was inappropriate, Greene cited the bath incident. Investigator Temple noted that as a nine year old, M.R.G. may not have needed help drying off to which Greene responded, "That's correct. She may not have necessarily needed help drying off."

Andrew Fena, a social worker with St. Louis County Public Health and Human Services in the Initial Intervention Unit (IIU), interviewed Greene. Fena recorded his interview with Greene, and that interview was played at trial. Fena and Greene discussed M.R.G.'s bath at Greene's apartment. Greene again said that M.R.G. told him that "she had not had a bath in about a week." Greene stated, "I came in there while she was undressed and cooled the water down. . . . I brought her a towel and helped her dry off . . . like what you would normally do . . . ." Greene continued, "I used the towel to dry the parts that she had missed and wrapped her up in a towel . . . ." Later in the interview, Fena and Greene returned to M.R.G.'s bath. Fena asked, "Did you scrub her vagina that day, maybe?" Greene responded, "I probably told her don't forget. . . . But I helped her—I helped her dry off . . . [s]o I touched her there when I helped her dry off." Greene claimed, "I did not consciously dry her specific body parts." In response to Fena's question about whether M.R.G. may have misconstrued any of Greene's actions where "she got confused and sort of turned it into a yucky thing for her," Greene stated, "It could have been the towel drying."

M.R.G. testified that she had been to Greene's apartment "once" and took a bath while she was there. M.R.G. stated that Greene ran the bath for her and "scrubbed my back" with "[a] sponge." M.R.G. testified that Greene did not scrub anywhere else and

4

that she dried herself off. M.R.G. testified that after her bath, Greene asked M.R.G. to bring him a towel while he was in the bath and M.R.G. saw him naked, which made her feel "[d]isgusted." M.R.G. testified that she told her sisters what had happened but not until after L.E.G. had told their mother what happened to her.

The district court also admitted *Spreigl* evidence for the purposes of establishing common scheme or plan, modus operandi, and intent.[1] The *Spreigl* witness testified that she met Greene through basketball when she was "about 14" years old. Greene agreed to give the witness extra coaching and became close with the witness and her family, to the point of coming over for Christmas. The witness testified that the relationship between her and Greene changed to "prolonged hugs and then it moved to like kisses on cheek." The witness also testified that when she was in eighth grade, Greene had sex with her at her family's home.

The jury returned guilty verdicts on counts one, two, and three, and a not-guilty verdict on count four. Count three was based on the bath incident with M.R.G.

Greene filed a notice of appeal on January 21, 2014, and we later stayed the appeal so that Greene could file a petition for postconviction relief. The district court summarily denied Greene's petition for postconviction relief.

---

[1] "*Spreigl* evidence is evidence of another crime, wrong, or bad act . . . ." *Ture v. State*, 681 N.W.2d 9, 15 (Minn. 2004). Such evidence is inadmissible to "prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). However, *Spreigl* evidence is admissible for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

**I.**

Greene argues that it was plain error to admit L.E.G's video recitation of what M.R.G. allegedly told her about the bath incident. Greene contends that this was inadmissible hearsay, but did not object to L.E.G.'s videotaped statement on that ground at trial. Where a defendant fails to object to the admission of evidence, our review is under the plain-error standard. Minn. R. Crim. P. 31.02; *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). "The plain error standard requires that the defendant show: (1) error; (2) that was plain; and (3) that affected substantial rights." *State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002). An error is plain if it is clear and obvious. *State v. Jenkins*, 782 N.W.2d 211, 230 (Minn. 2010). "If those three prongs are met, we may correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Strommen*, 648 N.W.2d at 686 (quotation omitted).

Greene contends that even if L.E.G's videotaped statement was properly admitted, there is no hearsay exception that would allow for the admittance of M.R.G's statements to L.E.G. We agree. Hearsay is an out-of-court statement that is offered to prove the truth of the matter asserted. Minn. R. Evid. 801(c). Generally, hearsay is inadmissible unless an exception applies. Minn. R. Evid. 802. When, as here, there are two layers of hearsay (the first layer consisted of L.E.G.'s videotaped statement and the second layer was L.E.G's recitation of what M.R.G. told her about the alleged bath incident), each layer must fall within an established exception. Minn. R. Evid. 805. After a thorough review of the record and the Minnesota Rules of Evidence, we conclude that the second layer of hearsay contained in the video statement does not meet any of the hearsay

exceptions. Consequently, the district court committed plain error when it admitted M.R.G.'s out-of-court statement through L.E.G.'s video interview. *See State v. Reed*, 737 N.W.2d 572, 583 (Minn. 2007) (stating that an error is plain if it "contravenes case law, a rule, or a standard of conduct" (quotation omitted)). We do not reach the remaining portions of the plain-error analysis because we reverse Greene's conviction on count three for insufficient evidence.

Greene contends that his conviction on count three must be reversed because there was insufficient evidence to prove beyond a reasonable doubt that he had sexual contact with M.R.G.'s intimate parts. Moreover, Greene argues that because it was plain error to admit L.E.G.'s video recitation of what M.R.G. told her, we cannot consider that piece of evidence in assessing the sufficiency of the evidence on count three. We agree. *See State v. Daniels*, 380 N.W.2d 777, 781 (Minn. 1986) ("If the hearsay statements . . . are inadmissible . . . appellant's conviction rests on circumstantial evidence."); *State v. Carver*, 380 N.W.2d 821, 827 (Minn. App. 1986) ("The only positive evidence that the jury could have relied on . . . had to be the hearsay statements we have already held inadmissible. Those convictions are accordingly reversed."), *review denied* (Minn. Mar. 27, 1986).

"A defendant bears a heavy burden to overturn a jury verdict." *State v. Vick*, 632 N.W.2d 676, 690 (Minn. 2001). On review of the sufficiency of the evidence, we must assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." *State v. Moore*, 438 N.W.2d 101, 108 (Minn. 1989). The reviewing court "will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt,

could reasonably conclude [the] defendant was proven guilty." *Bernhardt v. State*, 684 N.W.2d 465, 476 (Minn. 2004) (quotation omitted). "The weight and credibility of the witnesses is for the trier of fact." *State v. Huss*, 506 N.W.2d 290, 292 (Minn. 1993).

A person who engages in sexual contact with another is guilty of criminal sexual conduct in the second degree if the complainant is under 13 years of age and the actor is more than 36 months older than the complainant. Minn. Stat. § 609.343, subd. 1(a). "Sexual contact" is defined as "the intentional touching . . . of the complainant's intimate parts" or "the touching of the clothing covering the immediate area of the intimate parts" that is "committed with sexual or aggressive intent." Minn. Stat. § 609.341, subd. 11(a)(i), (iv) (2010). "Intimate parts" is defined to include "the primary genital area, groin, inner thigh, buttocks, or breast of a human being." *Id.*, subd. 5 (2010).

We have previously construed the statute at issue here to concern a specific-intent crime. *State v. Austin*, 788 N.W.2d 788, 792 (Minn. App. 2010), *review denied* (Minn. Dec. 14, 2010). To convict Greene, the state was required to prove beyond a reasonable doubt that Greene "intend[ed] the specific result of touching [M.R.G.'s] intimate body parts." *See id.* at 793.

Greene argues that the evidence was insufficient to prove the "very specific element of contact with an intimate part." A conviction required the state to show more than "recklessness or negligence." *Id.* at 792. What the evidence needed to show was that Greene "intend[ed] the specific result of touching intimate body parts." *See id.* at 793. Because we have concluded that it was plain error to admit L.E.G.'s video recitation of what M.R.G. told her about the alleged bath incident, the only direct evidence remaining is Greene's statement that he may have touched M.R.G. when he

8

helped her dry off. Although it was for the trier of fact to determine who was credible and to decide how much weight to accord this statement, *see Huss*, 506 N.W.2d at 292, a jury acting with "due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt," *see Bernhardt*, 684 N.W.2d at 476, could not have reasonably concluded that Greene intended the specific result of touching M.R.G.'s intimate parts.

Nor is there sufficient circumstantial evidence to sustain the conclusion that Greene intended the specific result of touching M.R.G.'s intimate parts. In applying the circumstantial evidence standard, the reviewing court uses a two-step analysis. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). "The first step is to identify the circumstances proved. In identifying the circumstances proved, we defer to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the [s]tate." *Id.* at 598-99 (quotation and citation omitted). "The second step is to determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* at 599 (quotations omitted).

On the sexual-contact element, the circumstances proved were: (1) Greene touched M.R.G. at an unidentified time; (2) M.R.G. took a bath at Greene's house; (3) Greene may have touched M.R.G. when he helped M.R.G. towel off; and (4) Greene twice cited the towel incident as a time that M.R.G. may have been uncomfortable. Additionally, *Spreigl* evidence was admitted to show, among other things, intent.

Although the circumstances proved are consistent with the conclusion that Greene may have touched M.R.G.'s intimate parts, the circumstances also lead to the rational

9

hypothesis that Greene did not act with the requisite specific intent to touch M.R.G's intimate parts: he admitted to inadvertently touching M.R.G's intimate parts while helping her towel off. "Because of that reasonable doubt . . . there is insufficient evidence to support [Greene's] conviction . . . ." *See State v. Al-Naseer*, 788 N.W.2d 469, 481 (Minn. 2010). Accordingly, we reverse Greene's conviction on count three.

## II.

Greene raises two additional issues: (1) that the postconviction court erred when it summarily denied his postconviction petition; and (2) that the district court committed reversible error in denying his request for a modified *Spreigl* instruction. For reasons set out below, we do not fully address these arguments.

### A. Summary Denial of Postconviction Petition

Greene contends the postconviction court abused its discretion when it summarily denied his petition for relief. In his postconviction petition, Greene alleged that he was denied effective assistance of counsel because his trial attorney failed to file a motion to suppress Greene's interview with Fena. This court reviews a summary denial of a petition for postconviction relief for an abuse of discretion. *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). "Because claims of ineffective assistance of counsel are mixed questions of law and fact, we review the postconviction court's legal conclusions on such questions de novo." *State v. Nicks*, 831 N.W.2d 493, 503 (Minn. 2013).

A district court may summarily deny a postconviction petition when "the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2014). A petitioner asserting an ineffective-assistance-of-counsel claim should be granted an evidentiary hearing if the

petitioner has "allege[d] facts that, if proven by a fair preponderance of the evidence, would satisfy the two-prong [*Strickland*] test." *Bobo v. State*, 820 N.W.2d 511, 516 (Minn. 2012); *see Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064, 2068 (1984). Under prong two, "the defendant must prove there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Nicks*, 831 N.W.2d at 504.

After a thorough review of the record, we conclude that Greene did not allege facts showing that, under prong two, there is a reasonable probability that the result of the proceeding would have been different on counts one and two, the remaining convictions. Therefore, we affirm the postconviction court's summary denial of Greene's postconviction petition.

### B. *Spreigl* Instruction

Greene also requests that we reverse his convictions because the district court committed reversible error when it refused his request for a modified *Spreigl* instruction. A district court has "considerable latitude" in the selection of language for jury instructions. *State v. Gatson*, 801 N.W.2d 134, 147 (Minn. 2011) (quotation omitted). "The refusal to give a requested jury instruction lies within the discretion of the district court" and will not be reversed absent an abuse of discretion. *State v. Cole*, 542 N.W.2d 43, 50 (Minn. 1996). When a district court abuses its discretion in administering jury instructions, we apply the harmless-error standard. *See State v. Babcock*, 685 N.W.2d 36, 42 (Minn. App. 2004) (determining whether a district court's denial of a proposed jury instruction was harmless error), *review denied* (Minn. Oct. 20, 2004).

As with Greene's postconviction argument, we do not reach the merits of this issue. Even assuming the district court abused its discretion in denying Greene's *Spreigl* instruction request, we conclude that any error was harmless on counts one and two.

We affirm Greene's convictions on counts one (first-degree criminal sexual conduct) and two (second-degree criminal sexual conduct), affirm the postconviction court's summary denial of Greene's postconviction petition, but reverse Greene's conviction on count three (second-degree criminal sexual conduct) for insufficient evidence. We therefore remand the case to the district court for resentencing consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**