**STATE of Minnesota, Appellant,**

**v.**

**Gerald Alan HANSON, Respondent.**

**No. A09–2124.**

Supreme Court of Minnesota.

July 27, 2011.

Lori Swanson, Attorney General, John B. Galus, Assistant Attorney General, St. Paul, MN; and Richard R. Maes, Lyon County Attorney, Marshall, MN, for appellant.

David W. Merchant, Chief Appellate Public Defender, Rochelle R. Winn, Assistant State Public Defender, St. Paul, MN, for respondent.

## OPINION

PAGE, Justice.

Respondent Gerald Alan Hanson was charged with controlled substance crime in the first degree in violation of Minn.Stat. § 152.021, subd. 1(1) (2010) (possession of ten or more grams of a mixture containing methamphetamine with intent to sell); controlled substance crime in the second degree in violation of Minn.Stat. § 152.022, subd. 2(1) (2010) (possession of six or more grams of a mixture containing methamphetamine); felon in possession of a firearm in violation of Minn.Stat. § 624.713, subd. 1(2) (2010); and possession of drug paraphernalia in violation of Minn.Stat. § 152.092 (2010). The State dismissed the felon-in-possession charge at an omnibus hearing, and a jury subsequently found Hanson guilty of the remaining charges. Hanson was sentenced to 110 months in prison on his conviction for the first-degree controlled substance crime. The court of appeals reversed, concluding that the evidence was legally insufficient to support Hanson's conviction of possession of methamphetamine with intent to sell. *State v. Hanson,* 790 N.W.2d 198, 204 (Minn.App.2010). We granted the State's petition for review and now reverse.

On January 7, 2009, two Lyon County law enforcement officers went to Hanson's residence in search of J.G., for whom they had an arrest warrant. Hanson answered the door and told the officers that J.G. was not in the house, but agreed to let them look through the house to see if J.G. was there. While looking for J.G., one of the officers saw a bag of "crystal-like material" on top of a dresser in an open closet in one of the bedrooms. The officer also saw two glass pipes and a glass bowl next to the bag. Based on his experience in law enforcement, the officer believed that the bag and glass bowl contained methamphetamine and that the glass pipes were used to smoke methamphetamine. The officer called Hanson into the bedroom and asked him what the substance in the bag was. Hanson first stated that the substance was riboflavin, then garbage, then rat poison, giving a 10– to 15–second pause between each changed answer. Hanson later stated that the substance in the bag had been left by one of J.G.'s friends and that it had been there for over a month.

An investigator was called to field test the substance and confirmed that the substance in the bag was methamphetamine. As a result, Hanson was placed under arrest and transported to the Lyon County Jail. During booking, a small digital scale was seized from Hanson's person.

A search warrant for Hanson's home was obtained, and during the subsequent search, 23 items were seized. Among the items seized were a plastic bag containing a white crystal-like powder, three glass pipes, and a glass bowl found on top of a dresser; a bag containing a white substance, a purple plastic plate with white residue, a plastic bowl and plastic spoon, about 100 small, unused plastic bags, approximately two inches wide and three inches deep in size,[1] and a razor blade

---

1. The unused plastic bags were received as part of Exhibit 18 at trial. The Exhibit Record describes Exhibit 18 as "[m]ultiple empty small baggies and razor blade," and the investigator who participated in the search of Hanson's home testified that there were "numerous plastic baggies." In its brief and at oral argument to our court, the State clarified that Exhibit 18 consisted of "approximately 100 small, plastic baggies, approximately two inches wide and three inches deep." This point was not disputed by Hanson.

found in a drawer inside that same dresser; plastic bags with white residue, several pipes, a propane torch attachment, a one-pound propane tank, and butane fuel found in the living room; and a glass pipe and a bag filled with what was believed to be a cutting agent in the bathroom. The total number of pipes found was eight.

At trial, an employee of the Minnesota Bureau of Criminal Apprehension testified that the plastic bag found on the dresser in Hanson's home contained 2.4 grams of methamphetamine, the glass bowl on the dresser contained 1.3 grams of methamphetamine, the bag found inside the dresser drawer contained 8.9 grams of methamphetamine, and that the bag containing what was believed to be a cutting agent held 23.6 grams of an unidentified substance.

The officers who arrested Hanson testified that the plastic bag containing the white crystal-like powder found on top of Hanson's dresser was of the sort commonly used to hold methamphetamine, that the pipes on top of Hanson's dresser were of the type used to smoke methamphetamine, and that the digital scale found on Hanson's person was of the type frequently used in narcotics transactions. There was testimony from the investigator who field-tested the substance in Hanson's home that the small, unused plastic bags, razor blade, bowl, spoon, and plate were all items that could be used in the preparation of controlled substances for distribution. The State also presented expert testimony from a law enforcement officer from the Brown–Lyon–Redwood Drug and Gang Task Force that the items seized from Hanson's home "indicate or [are] indicative of a person who was selling methamphetamine." In particular, the expert testified that methamphetamine is sold in amounts between half a gram to a pound and that the most common quantity that is sold is an "eight-ball," or 3.5 grams. The expert also testified that the purple plastic plate with the white substance on it could have been used to mix methamphetamine with a cutting agent, that the unused bags are of the type used to package narcotics, that the razor blade could be used to "cut" methamphetamine, and that the bowl and spoon found in Hanson's dresser drawer could be used to mix narcotics.

After the jury found Hanson guilty of all three charges, the district court sentenced Hanson to 110 months for the first-degree controlled substance crime. The court of appeals reversed Hanson's first-degree controlled substance crime conviction, concluding that "the evidence supports the reasonable inference that Hanson possessed the methamphetamine only for personal use" and therefore a reasonable doubt existed as to whether Hanson possessed methamphetamine with an intent to sell. *Hanson*, 790 N.W.2d at 204.

In assessing the sufficiency of the evidence, "we view the evidence in a light most favorable to the verdict to determine 'whether the facts in the record and the legitimate inferences drawn from them would permit the jury to reasonably conclude that the defendant was guilty beyond a reasonable doubt of the offense of which he was convicted.'" *Davis v. State*, 595 N.W.2d 520, 525 (Minn.1999) (quoting *State v. Moore*, 481 N.W.2d 355, 360 (Minn.1992)). We will not disturb the jury's verdict "if the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that [a] defendant was proven guilty of the offense charged." *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn.2004) (alteration in original) (citation omitted) (internal quotation marks omitted).

When assessing the sufficiency of circumstantial evidence, our review warrants closer scrutiny. *State v. Bias*, 419 N.W.2d 480, 484 (Minn.1988); *see State v. Al–Naseer*, 788 N.W.2d 469, 473–74 (Minn. 2010); *State v. Andersen*, 784 N.W.2d 320, 329–30 (Minn.2010); *State v. Stein*, 776 N.W.2d 709, 714 (Minn.2010) (plurality opinion). When reviewing the sufficiency of circumstantial evidence, we first identify the circumstances proved. *Al–Naseer*, 788 N.W.2d at 473; *Andersen*, 784 N.W.2d at 329. Consistent with our standard of review, we defer to the jury's acceptance of the proof of these circumstances as well as to the jury's rejection of evidence in the record that conflicted with the circumstances proved by the State. *Al–Naseer*, 788 N.W.2d at 473; *Andersen*, 784 N.W.2d at 329. We recognize that "[j]uries are generally 'in the best position to weigh the credibility of the evidence and thus determine which witnesses to believe and how much weight to give their testimony.'" *Andersen*, 784 N.W.2d at 329 (quoting *State v. Hughes*, 749 N.W.2d 307, 312 (Minn.2008)); *see Al–Naseer*, 788 N.W.2d at 473 ("We recognize that the trier of fact is in the best position to determine credibility and weigh the evidence.").

Our second step is to "examine independently the reasonableness of all inferences that might be drawn from the circumstances proved," including inferences consistent with a hypothesis other than guilt. *Andersen*, 784 N.W.2d at 329 (quoting *Stein*, 776 N.W.2d at 716); *accord Al–Naseer*, 788 N.W.2d at 473–74. In contrast to the deference given when identifying the circumstances proved, "we give no deference to the fact finder's choice between reasonable inferences." *Andersen*, 784 N.W.2d at 329–30 (internal quotation marks omitted) (quoting *Stein*, 776 N.W.2d at 716); *accord Al–Naseer*, 788 N.W.2d at 474. Circumstantial evidence must form a complete chain that, as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt. *Al–Naseer*, 788 N.W.2d at 473. Therefore, "[i]n assessing the inferences drawn from the circumstances proved, the inquiry is not simply whether the inferences leading to guilt are reasonable. Although that must be true in order to convict, it must also be true that there are no other reasonable, rational inferences that are inconsistent with guilt." *Andersen*, 784 N.W.2d at 330 (internal quotation marks omitted) (quoting *Stein*, 776 N.W.2d at 716); *accord Al–Naseer*, 788 N.W.2d at 474. This is because "if any one or more circumstances found proved are inconsistent with guilt, or consistent with innocence, then a reasonable doubt as to guilt arises." *Al–Naseer*, 788 N.W.2d at 474 (internal quotation marks omitted) (quoting *Andersen*, 784 N.W.2d at 338 (Meyer, J., concurring)). But "[w]e will not overturn a conviction based on circumstantial evidence on the basis of mere conjecture." *Andersen*, 784 N.W.2d at 330 (alteration in original) (internal quotation marks omitted) (quoting *State v. Lahue*, 585 N.W.2d 785, 789 (Minn.1998)); *accord Al–Naseer*, 788 N.W.2d at 473. The State does not have the burden of removing all doubt, but it must remove all reasonable doubt. *Andersen*, 784 N.W.2d at 330 (citing *Hughes*, 749 N.W.2d at 313); *accord Al–Naseer*, 788 N.W.2d at 473.

In order to prove that Hanson was guilty of controlled substance crime in the first degree, the State had to prove beyond a reasonable doubt that "on one or more occasions within a 90–day period [Hanson] unlawfully [sold] one or more mixtures of a total weight of ten grams or more containing ... methamphetamine." Minn.Stat. § 152.021, subd. 1(1). The term "sell" means "(1) to sell, give away,

barter, deliver, exchange, distribute or dispose of to another, or to manufacture; or ... (3) to possess with intent to perform an act listed in clause (1)." Minn.Stat. § 152.01, subd. 15a (2010). Evidence tending to show an intent to sell or distribute "includes evidence as to the large quantity of drugs possessed, evidence as to the manner of packaging, and other evidence." *State v. White*, 332 N.W.2d 910, 912 (Minn. 1983) (concluding that there was sufficient evidence that defendant possessed marijuana with intent to sell when police found over 100 pounds of marijuana on his farm).

Here, the State proved the following circumstances:

(1) Hanson possessed 12.6 grams of methamphetamine in or on top of the dresser in his bedroom closet consisting of 2.4 grams found in a bag on top of the dresser, 1.3 grams in a glass bowl on top of the dresser, and 8.9 grams in a bag in the top right dresser drawer;

(2) In a drawer of that same dresser, there was a purple plate with a white powdery substance on it, a bowl with a crystalline substance on it, a spoon suitable for use in mixing drugs, a razor blade, and approximately 100 unused plastic bags, approximately two inches wide and three inches deep;

(3) In the bathroom, Hanson had a bag containing 23.6 grams of a white powdery substance believed to be a cutting agent, along with a methamphetamine pipe;

(4) In the living room, Hanson had several more methamphetamine pipes, the tip of a propane torch, a one-pound propane tank, and a can of butane fuel, along with additional plastic bags containing a white residue; and

(5) Hanson had on his person a digital scale of the type frequently used in narcotics transactions.

The State also proved that the plastic bag containing the white crystal-like powder found on top of Hanson's dresser was of the sort commonly used to hold methamphetamine, that the eight pipes Hanson possessed were of the sort used to smoke methamphetamine, that the approximately 100 small, unused bags found were of a type used in the distribution of methamphetamine, that possession of each of these items was consistent with and indicative of a person selling methamphetamine, and that Hanson made contradictory statements about the white powdery substance found in the bag on top of his dresser.

Our review of the circumstances proved satisfies us that the evidence presented, when viewed as a whole, as our circumstantial evidence standard requires us to do, is sufficient to support Hanson's first-degree controlled substance crime conviction. Although it is true that the circumstances proved include circumstances from which, when viewed in isolation, it can be reasonably inferred that Hanson possessed the methamphetamine solely for personal use, there are also circumstances proved from which the only reasonable inference to be drawn is that the methamphetamine was possessed for purposes of sale. In particular, the only reasonable inference to be drawn from Hanson's possession of the approximately 100 small, unused plastic bags of a type used for the packaging of methamphetamine for distribution and sale is that Hanson possessed methamphetamine with an intent to sell. There is nothing in the record from which it can be inferred that the possession of these bags served some separate purpose other than as packaging for the distribution and sale of methamphetamine. In addition, the unused bags were found in the same dresser drawer as the razor blade, plastic bowl, plastic spoon, and plastic plate—all items that could be used in the preparation of controlled substances for distribution.

These items were also found in the same drawer as the bag containing 8.9 grams of methamphetamine. In that the unused bags were found in close proximity to other items used in the sale and distribution of methamphetamine, as well as a sizeable quantity of methamphetamine, we conclude that the only reasonable inference to be drawn from the circumstances proved is that Hanson possessed the 12.6 grams of methamphetamine with the intent to sell.

It can also be reasonably inferred from the number of methamphetamine pipes possessed by Hanson that Hanson shared methamphetamine with others. And given that the statutory definition of "sell" includes "to sell, give away, barter, deliver, exchange, distribute or dispose of to another" as well as "to possess with intent to perform" any of those acts, Minn.Stat. § 152.01, subd. 15a, we are satisfied that there was sufficient evidence that Hanson possessed methamphetamine with the intent to sell.

We conclude that the evidence that Hanson possessed the approximately 100 small, unused bags, when coupled with the remaining evidence as a whole, forms a complete chain that leads so directly to Hanson's guilt of possessing more than 10 grams of methamphetamine with the intent to sell as to exclude beyond a reasonable doubt any rational inference other than guilt. Therefore, we reverse the court of appeals.

Reversed.