*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0306**

State of Minnesota,
Respondent,

vs.

Alan Michael Habiger,
Appellant.

**Filed March 7, 2016
Affirmed
Chutich, Judge**

Stearns County District Court
File No. 73-CR-12-4219

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, St. Cloud Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Mark D. Nyvold, Special Assistant Public Defender, Fridley, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Chutich, Judge; and Randall, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**CHUTICH**, Judge

Appellant Alan Habiger appeals his conviction of aggravated robbery, contending that the state's circumstantial evidence was insufficient to convict him of this crime. Specifically, Habiger argues that the uncontroverted evidence that his right hand and arm are not functional is inconsistent with guilt. Because we find that the circumstances proved are inconsistent with any reasonable hypothesis besides guilt, we affirm Habiger's conviction.

**FACTS**

In the afternoon of April 4, 2012, a man robbed the Shopko pharmacy in Saint Cloud. At trial, the state presented the following evidence, including testimony from M.M., a pharmacy employee, and the chief pharmacist, who described the robbery. They said that the robber was approximately five feet and five or six inches tall and appeared to be a white male. Little showed of his face because he was wearing a dust mask, dark sunglasses, and a green hooded sweatshirt with the hood pulled over his head.

M.M. testified that the person set a note on the counter, from which she read the following: "Don't be a hero. Hand over the OxyContin." [1] She quit reading the note at that point and called the chief pharmacist to the front of the pharmacy. The pharmacist testified

---

[1] OxyContin is the brand name for a timed-release formula of oxycodone, a medically prescribed painkiller that can be abused for its "euphoric effects." Dep't of Justice, Drug Enf't Admin., San Diego Field Div., *Facts & Information: OxyContin Abuse*, http://www.dea.gov/divisions/sd/2012/sd_oxycontin_brochure.pdf. Oxycodone is also found in other painkillers, such as Percocet and Percodan, and is classified by the Drug Enforcement Administration as a Schedule II narcotic. *Id.*

that the note said, among other things, "Don't be a hero. If you don't want to be shot give me your OxyContin." The state entered into evidence a Shopko surveillance video that captured the robber entering and exiting the store.

The pharmacist gave the man 100 pills of 10-milligram OxyContin and 100 pills of 20-milligram OxyContin. He testified that when he brought the bottles over, the robber "reached up with the one hand, the left hand, and grabbed some and grabbed the other bottle with the right hand." The man's right arm seemed more restricted than his left arm.

The bottles that the pharmacist gave to the robber had labels with manufacturer information on them. According to the pharmacist, these labels are never taken off the manufacturer's bottles that are kept in the pharmacy; neither these bottles nor the manufacturer information are given to customers.

The pharmacist followed the robber after he went out the front door of the store. When he got outside, the only other person he saw besides the robber was a woman, who pointed to the robber as he rounded a corner.

Two witnesses in the parking lot, B.P. and his wife, D.S., testified at trial. They saw a person in a hooded sweatshirt walking quickly or running and a person in a white lab coat following at a distance. The witnesses also saw a woman point in the direction of the person in the hooded sweatshirt, so they decided to follow him. The couple then drove directly to the north parking lot area, losing sight of the suspect for some seconds as he rounded the corner, then saw a man fitting the physical description of the robber driving away in the only occupied vehicle in the area. The witnesses provided police the license plate number of the car, which was registered to Habiger.

3

B.P. made eye contact with the man as he passed them in the parking lot, and he later identified Habiger from a blind sequential photo lineup and again in the courtroom at trial as the person driving the car. B.P. and D.S. saw the person driving the car take off a hooded sweatshirt. B.P. clarified at trial that he recognized Habiger as the person who was driving the car, not as the person who left the store.

Officer Daniel Miller, of the Sartell Police Department, testified about two searches of Habiger's garbage that occurred after the robbery. Officer Miller found a receipt for a package of breathing masks, dated March 31, 2012. He also found an empty pack of Old Gold cigarettes containing two manufacturer's labels for OxyContin that were tightly folded into little balls. Officer Miller also found a usage guide and an April 2012 receipt for the purchase of Percocet[2] from another pharmacy.

A search of Habiger's home revealed a pill bottle for an oxycodone prescription and a box of protective breathing masks. These masks had a ventilation hole in the middle and a green mechanism under the chin. L.K., an assistant pharmacist working at the time of the robbery, testified that the robber wore a "cheaper" white mask without any extra features.

The state further introduced testimony regarding Habiger's prescription history. From April 2011 to April 2012, Habiger had prescriptions for methadone and oxycodone-acetaminophen. The state also played a video-recorded statement from Habiger, who denied committing the robbery. Regarding the drug manufacturer's labels found in the

---

[2] Testimony at trial established that Percocet is a brand name of oxycodone-acetaminophen.

4

cigarette pack, Habiger explained that he either received the drug manufacturer's label from the pharmacy or that he had picked it up when he was walking around picking up garbage.

At trial, Habiger presented evidence that his right arm has been almost entirely non-functional since a serious car accident in 2005. Dr. Gregory Schlosser, who had been Habiger's rehabilitation and pain-management physician since the accident, testified that a February 2013 evaluation of Habiger found that his right arm "was listed as having some minimal active movement" but not enough to "move it against gravity." He also testified that Habiger has used a sling consistently since the accident, he does not have the ability to reach and grasp things in his right hand, and he would probably not be able to hold a piece of paper in his right hand, even if someone placed it there.

Dr. Schlosser also testified regarding Habiger's history with OxyContin and oxycodone. He testified that Habiger was initially prescribed OxyContin after the accident, but later switched to Percocet. He confirmed that an allergic reaction to OxyContin was consistent with Habiger's medical records.

Habiger showed his atrophied arm to the jury and testified that he would not be able to put his right hand in the pocket of a hoodie, as the robber is shown doing in the Shopko surveillance footage, or pull a hoodie over his head as D.S. and B.P. testified. He and his mother both testified that Habiger has a severe itching reaction to OxyContin. Habiger acknowledged that he was in the Shopko parking lot right after the robbery occurred. He claimed that he went there to buy a tool to remove a fishhook from his dog's leg, but once he got there, he realized that he had a tweezer with him and had no reason to enter Shopko.

5

The jury convicted Habiger of one count of aggravated robbery in the second degree. The sentencing court granted a stay of imposition and required Habiger to serve 180 days in local confinement as a condition of a 15-year probationary sentence. Habiger appeals.

## D E C I S I O N

### Sufficiency of the Evidence

Habiger challenges the sufficiency of the evidence concerning the identity of the robber. He asserts that uncontroverted evidence about his injured right arm proves that he could not have been the Shopko robber. Even applying the more stringent standard of review required in cases involving circumstantial evidence, Habiger's argument cannot prevail.

Habiger was convicted of second-degree aggravated robbery. *See* Minn. Stat. § 609.245, subd. 2 (2010). Accordingly, the state needed to prove that Habiger took personal property from the person or presence of another using, or threatening the use of, imminent force while implying that he possessed a dangerous weapon. *See id.*; *see also* 10 *Minnesota Practice*, CRIMJIG 14.05 (2006). The only disputed element here is identity.

Because of the short gap in time when the robber disappeared around the corner, the eyewitnesses were not certain whether the person they identified coming around the Shopko corner was the same person who robbed the pharmacy. Accordingly, the state agrees with Habiger that it relied on circumstantial evidence to prove that Habiger robbed the Shopko pharmacy that day. "[C]ircumstantial evidence is sufficient to sustain a conviction when all the *circumstances proved* are consistent with the hypothesis that the accused is guilty and inconsistent with any *rational* hypothesis except that of [the

6

accused's] guilt." *State v. Tscheu*, 758 N.W.2d 849, 857 (Minn. 2008) (quotation omitted). "Circumstantial evidence must form a complete chain that, in view of the evidence as a whole, leads so directly to the guilt of the defendant as to exclude beyond a reasonable doubt any reasonable inference other than guilt." *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012) (quotation omitted).

On review, this court gives greater scrutiny to convictions based on circumstantial evidence than those based on direct evidence. *Id.* Nevertheless, "we still construe conflicting evidence in the light most favorable to the verdict and assume that the jury believed the State's witnesses and disbelieved the defense witnesses." *Tscheu*, 758 N.W.2d at 858. An appellant must show something more than mere conjecture to overturn a conviction based on circumstantial evidence. *State v. Lahue*, 585 N.W.2d 785, 789 (Minn. 1998).

The first step in reviewing the sufficiency of circumstantial evidence is to identify the circumstances proved. *State v. Hanson*, 800 N.W.2d 618, 622 (Minn. 2011). "In identifying the circumstances proved, we defer . . . to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the State." *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010) (quotation omitted).

The second step is to "examine independently the reasonableness of all inferences that might be drawn from the circumstances proved, including inferences consistent with a hypothesis other than guilt." *Hanson*, 800 N.W.2d at 622 (quotation omitted). In this independent examination, "we give no deference to the fact finder's choice between

reasonable inferences." *Andersen*, 784 N.W.2d at 329–30 (quotation omitted). "[T]he inquiry is not simply whether the inferences leading to guilt are reasonable. Although that must be true in order to convict, it must also be true that there are no other reasonable, rational inferences that are inconsistent with guilt." *Id.* at 330 (quotation omitted). This review does not require the evidence to exclude "possibilities of innocence"; it only needs to make any theory of innocence "seem unreasonable." *Tscheu*, 758 N.W.2d at 858.

*Circumstances Proved*

Applying these principles and construing conflicting evidence in the light most favorable to the verdict, the circumstances proved are as follows. The Shopko West pharmacy in St. Cloud was robbed of two manufacturer's bottles of OxyContin on April 4, 2012, by a person using a note that said, in part, "Don't be a hero. If you don't want to be shot give me your OxyContin." The person was wearing a dust mask, dark sunglasses, and a green hooded sweatshirt with the hood pulled over his head and appeared to be white and male. Habiger is about the same height and build as the robber. The bottles had manufacturer's labels attached. After receiving the bottles of OxyContin, the person left Shopko through the front door. Outside the store, two witnesses saw a person dressed similarly to the robber walking quickly or running. The witnesses decided to follow the person, losing track of him for only 10 to 15 seconds as he rounded a corner. Shortly after, the witnesses saw a person driving around the corner from the same direction. The witnesses memorized the person's license plate number, which was registered to Habiger. One of the witnesses, who made eye contact with the person in the car, identified Habiger in a blind sequential line-up and again at trial as the driver of the car.

After the robbery, the police searched Habiger's garbage twice, finding, among other things, a receipt for a package of protective breathing masks that were purchased four days before the robbery, a usage guide and receipt for oxycodone, and an empty Old Gold cigarette pack, the brand that Habiger admitted smoking, containing two manufacturer's labels for OxyContin. These manufacturer's labels are not distributed to patients, and the bottles taken by the suspect at the robbery had manufacturer's labels attached to them. After taking a statement from Habiger, the police executed a search warrant for Habiger's home, finding a pill bottle for an oxycodone prescription and a box of protective breathing masks. Habiger has a chemical dependence on oxycodone.

Regarding Habiger's injured right arm, to the extent that the evidence regarding his injuries contradicts the verdict, we must assume that the jury did not believe his testimony or that of Dr. Schlosser.

*Reasonable Inferences*

Next, we must determine if the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis other than guilt. We agree that the state proved "two very significant, salient facts: (1) the nearly seamless observations of Habiger from the moment of the robbery until he was identified in his car, and (2) the otherwise inexplicable presence of the labels in his garbage." B.P. and D.S. only lost sight of the suspect for approximately 10 to 15 seconds and did not see anyone else in the parking lot, and the jury made the only rational inference that the man the couple saw leaving the parking lot was the same one they saw the pharmacist following out of the store, and therefore the person who robbed the store.

9

Further, from the proved circumstance that the manufacturer's labels were found concealed in his garbage in an empty pack of the brand of cigarettes that Habiger admits to smoking, the jury drew the reasonable inference that he stole the bottles and then attempted to hide the labels in a cigarette pack. The alternative hypotheses offered by Habiger – that the labels came from the pharmacy with his prescribed medications or from him picking up trash on a walk – are unreasonable. The chief pharmacist testified that the pharmacy does not give those labels to the general public, so it is unlikely that he would have gotten them legitimately from the pharmacy. For the same reason, it is also unlikely that he picked the labels up while picking up garbage. Habiger's hypothesis simply does not rise above the level of "mere conjecture." *See Lahue*, 585 N.W.2d at 789 (noting that appellate courts "will not overturn a conviction based on circumstantial evidence on the basis of mere conjecture").

By emphasizing the injuries to his right arm, Habiger essentially asks us to reverse the district court because his conviction is against the weight of the evidence. "Our precedent does not permit us to re-weigh the evidence." *State v. Franks*, 765 N.W.2d 68, 73 (Minn. 2009); *see also State v. Robinson*, 536 N.W.2d 1, 2 (Minn. 1995) ("We reject defendant's request . . . that we weigh the evidence, as a kind of 13th juror, and grant him relief on the ground the verdict of guilty was against the weight of the evidence."). Rather, we must construe "the evidence in the light most favorable to the verdict," *id.*, assuming that the jury disbelieved any evidence to the contrary. *State v. Hayes*, 831 N.W.2d 546, 552 (Minn. 2013). The jury heard the evidence regarding Habiger's arm, assessed the credibility of the witnesses, weighed their testimony against the state's strong evidence,

and determined that Habiger was guilty beyond a reasonable doubt. Considering the circumstances proved and independently examining the reasonableness of all inferences that might be drawn from these circumstances, we conclude that only one reasonable conclusion can be drawn: Habiger robbed the Shopko pharmacy on April 4, 2012.

**Affirmed.**