*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1047**

State of Minnesota,
Respondent,

vs.

Sonny Ray Juday,
Appellant.

**Filed March 28, 2016
Affirmed
Kalitowski, Judge\***

Fillmore County District Court
File No. 23-CR-14-349

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, St. Paul, Minnesota; and

Brett Corson, Fillmore County Attorney, Preston, Minnesota (for respondent)

Zachary C. Bauer, Meshbesher & Spence, Ltd., Rochester, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Bjorkman, Judge; and Kalitowski, Judge.

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**KALITOWSKI**, Judge

Appellant Sonny Juday challenges his conviction of ineligible person in possession of a firearm in violation of Minn. Stat. § 609.165, subd. 1b(a) (2014). Juday argues that (1) the district court erred in denying his suppression motion because the warrantless entry into his father's home was unlawful; (2) his trial counsel was ineffective; and (3) the evidence was insufficient to support his conviction. We affirm.

**FACTS**

Appellant Sonny Ray Juday's father, G.J., owned a home with Juday's grandmother, E.J. E.J. and her husband, L.J., did not live at this house but were often there to care for G.J., who is a paraplegic. Juday occasionally slept there. In April 2014, a Fillmore County deputy sheriff was dispatched to G.J.'s home in response to a call reporting a domestic-violence related incident. L.J. met the deputy at the door; he was holding a wooden dowel and explained that he had it in case he needed to defend himself from Juday.

L.J. invited the deputy in; the deputy was familiar with the family and knew that L.J. and E.J. did not live there, but that they were frequently there to care for their son and that E.J. was a co-owner of the house. L.J. said they stopped by the house to pick up personal items for G.J., who was having surgery. Juday was there when they arrived and became verbally abusive toward E.J., calling her "a f-cking b-tch" and telling her to "get the f-ck out of here."

From the common area, L.J. pointed to a .22 rifle leaning against a door in Juday's former bedroom, and told the deputy that it belonged to Juday and that Juday was a

2

convicted felon. The deputy and another officer could see the rifle from where they were standing outside the room. The deputy picked it up, noted that it had a banana-clip magazine, and ejected both a live and a spent cartridge from the rifle. E.J. told the officers that Juday had a window open in the room and was shooting at a crow when his grandparents arrived. The deputies noticed that a window in the room was open despite the cold weather. E.J. subsequently added that she did not want to cause trouble, and she would not testify in court that she saw Juday with the gun.

Juday was charged with felon in possession of a firearm and felon in possession of a pistol/assault weapon. Before trial, Juday sought to suppress the gun evidence, arguing that the warrantless search was unlawful because L.J. did not have authority to invite the deputy into the house. The district court found that both E.J. and L.J. consented to the entry, E.J. was co-owner of the house, both of them are G.J.'s personal caretakers and have "regular and frequent access and control over the premises." The district court concluded that they had common authority or apparent authority to consent to entry and denied Juday's suppression motion.

At trial, E.J. testified that she could not remember what she told the deputy because she was worried about G.J., and she denied seeing Juday with a gun. Her prior statements were introduced as unobjected-to-substantive evidence through the deputies' testimony. The jury found Juday guilty of both charges, and the district court sentenced him on the felon-in-possession conviction.

3

**D E C I S I O N**

**I.**

In challenges to the denial of a pretrial suppression motion, we review the district court's factual findings for clear error and its legal determinations de novo. *State v. Lemieux*, 726 N.W.2d 783, 787 (Minn. 2007). "Findings of fact are clearly erroneous if, on the entire evidence, we are left with the definite and firm conviction that a mistake occurred." *State v. Diede*, 795 N.W.2d 836, 846–47 (Minn. 2011).

The United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A warrantless entry into a constitutionally protected area, such as one's home, is "presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S. Ct. 1371, 1380 (1980); *State v. Thompson*, 578 N.W.2d 734, 740 (Minn. 1998). Valid consent is an exception to the warrant requirement. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992).

Juday argues that E.J. and L.J. did not have authority to consent to the police entry into his father's home. We disagree.

The United States Supreme Court has held that a third party who "possess[es] common authority over or other sufficient relationship to the premises or effects sought to be inspected" has authority to consent to a search. *United States v. Matlock*, 415 U.S. 164, 171, 94 S. Ct. 988, 993 (1974). The Minnesota Supreme Court articulated a more stringent standard, noting that "a finding of 'mutual use' is the essential ingredient of effective consent." *State v. Licari*, 659 N.W.2d 243, 251 (Minn. 2003) (quotation omitted).

4

The district court found that (1) E.J. and L.J. provide care for G.J. and have "regular and frequent access and control over the premises"; (2) they were at the house on the day of the incident at his request to pick up some of his belongings; and (3) E.J. had a key to everything in the house, to which she goes "several times a day" to "check up on [G.J.] and do routine housework." These findings are not clearly erroneous and support the district court's conclusion that E.J. and L.J. had mutual use of the property and, accordingly, actual authority to consent to police entry into the house.

Moreover, even if common authority does not actually exist, "consent to entry is still valid where, under an objective standard, an officer reasonably believes the third party has authority over the premises and could give consent to enter." *Thompson*, 578 N.W.2d at 740. Here, L.J. called the sheriff's office from the house, met the deputy at the door, and invited him inside. The deputy knew that E.J. was a co-owner of the house and that she and L.J. were frequently at the house caring for G.J. We therefore conclude that it was objectively reasonable for the deputy to believe that E.J. and L.J. had authority over the premises.

The district court also upheld seizure of the gun under the plain-view exception to the warrant requirement. Juday argues that this holding is not supported by the record because the officers both testified that his grandfather led them to the gun in his bedroom. The plain-view exception applies only if three conditions are met: "(1) police were lawfully in a position from which they viewed the object, (2) the object's incriminating character was immediately apparent, and (3) the officers had a lawful right of access to the object." *In re Welfare of G.M.*, 560 N.W.2d 687, 693 (Minn. 1997).

The district court credited the testimony of the deputies, who testified that they could see the gun from the common area of the home, where they were lawfully present. We defer to finders of fact on credibility matters. *See State v. Juarez*, 837 N.W.2d 473, 487 (Minn. 2013) (stating that witness credibility is an issue for the district court, not the appellate court). The record supports the district court's findings that the officers saw the gun when they were lawfully inside the common areas of the home, and they recognized the incriminating nature of the gun after L.J. told them that Juday was a felon. Thus, the seizure of the gun was constitutional under the plain-view exception to the warrant requirement.

**II.**

The Sixth Amendment guarantees a right to a fair trial and, to ensure that a fair trial is conducted, a right to the assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685, 104 S. Ct. 2052, 2063 (1984). Because legal counsel "plays the role necessary to ensure that the trial is fair," the Sixth Amendment's guarantee of "the right to counsel is the right to effective assistance of counsel." *Id.* at 685-86, 104 S. Ct. at 2063. When asserting a claim of ineffective assistance of counsel, an appellant must satisfy a two-prong test: "(1) that trial counsel's performance fell below an objective standard of reasonableness; and (2) that a reasonable probability exists that, but for counsel's errors, the outcome . . . would have been different." *State v. Radke*, 821 N.W.2d 316, 323 (Minn. 2012).

An ineffective-assistance-of-counsel claim involves mixed questions of fact and law, which we review de novo. *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003). The

defendant has the burden of demonstrating both prongs of the *Strickland* test. *Id.* at 844. "We need not address both the performance and prejudice prongs if one is determinative. *Id.* at 842.

Juday contends that he was denied a fair trial because of the ineffective assistance of his trial counsel. He asserts that a witness, J.A., would have testified that he fired the .22 caliber rifle at a skunk outside the home in late March or early April, inserted a banana-clip magazine into the rifle prior to firing it, provided his address to Juday's attorney well before trial, and indicated that he would testify at trial. On the morning of the second day of trial, Juday's attorney notified the court that he wanted to call J.A., but the state objected on the basis of late witness disclosure. When asked by the court why the witness had not been added earlier, Juday's attorney claimed that he found out about J.A. after the first day of trial, when J.A.'s testimony became important in light of testimony regarding the empty cartridge found in the weapon. The district court denied Juday's request to call J.A. after considering the four-factor test in *State v. Lindsey*, 284 N.W.2d 368, 373 (Minn. 1979) (listing factors district courts should take into account when determining whether to preclude evidence based on a discovery violation).

Following his convictions, Juday obtained new counsel and moved for a new trial, attaching an affidavit from J.A., who stated that he previously worked at G.J.'s home doing maintenance and personal care, and that Juday's trial counsel did not contact him until the day before trial.

An attorney meets the objective standard of reasonableness by "exercising the customary skills and diligence that a reasonable competent attorney would perform under

7

similar circumstances." *State v. Hokanson*, 821 N.W.2d 340, 358 (Minn. 2012) (quotation omitted). We apply a strong presumption that counsel's conduct was reasonable. *Id.*

If the facts in J.A.'s affidavit are correct, Juday's attorney knew about J.A. well before the omnibus hearing, pretrial conferences, and jury trial. But the district court made no findings on the first prong because it concluded that there was no prejudice and the second prong was determinative.

"Under the second part of the *Strickland* test, [the court] determine[s] whether a reasonable probability exists that the outcome of the trial would have been different but for counsel's errors." *State v. Beecroft*, 813 N.W.2d 814, 844–45 (Minn. 2011) (quotation omitted). "A reasonable probability means a probability sufficient to undermine confidence in the outcome." *Rhodes*, 657 N.W.2d at 842 (quotation omitted).

The district court noted that J.A.'s testimony did not relate to the day of the incident or to whether Juday possessed the firearm on the day of the incident and concluded that there was no reasonable probability that the outcome would have been different had J.A. testified. We agree.

The statements in J.A.'s affidavit are not inconsistent with Juday's guilt. J.A.'s affidavit gave only a vague range of dates in which he claims to have shot the gun; it is unclear how his testimony would have related to whether he shot or possessed the gun on the day of the incident. Moreover, although J.A.'s statements could have provided an alternative explanation of the empty cartridge, they do not directly undermine any of the other evidence: the officers' testimony regarding E.J.'s statements, the fact that the gun was in Juday's former bedroom, which Juday's father testified is typically kept locked, and

8

the open window. Because Juday had the burden to demonstrate prejudice, and did not do so, his ineffective-assistance-of-counsel claim fails.

## III.

"When reviewing the sufficiency of the evidence leading to a conviction, we view the evidence in the light most favorable to the verdict and assume that the factfinder disbelieved any testimony conflicting with that verdict." *State v. Hayes*, 831 N.W.2d 546, 552 (Minn. 2013) (quotation omitted). We assume "that the jury believed all of the state's witnesses and disbelieved any evidence to the contrary." *State v. Chambers*, 589 N.W.2d 466, 477 (Minn. 1999).

This court "will not disturb the verdict if the jury, acting with due regard for the presumption of innocence" and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offenses. *Bernhardt v. State*, 684 N.W.2d 465, 476–77 (Minn. 2004) (quotation omitted). But reversal is appropriate "if facts proving an essential element of the offense are left more to conjecture and speculation than to reasonable inference." *State v. DeRosier*, 695 N.W.2d 97, 108 (Minn. 2005). Juday argues that the state's circumstantial evidence is insufficient to support his conviction because the circumstances proved do not eliminate all rational hypotheses other than guilt. We disagree.

First, E.J.'s statement that she saw Juday shooting at a crow was admitted as substantive evidence and described actual possession of a firearm. *See State v. Loyd*, 321 N.W.2d 901, 902 (Minn. 1982) (affirming conviction for felon in possession of a firearm based on witness statement that defendant displayed a handgun). E.J. denied making the

9

statement at trial, but weighing the evidence is the province of the jury, and this court does not reweigh evidence on appeal. *See State v. Franks*, 765 N.W.2d 68, 73 (Minn. 2009) ("Our precedent does not permit us to re-weigh the evidence.").

In addition, the state provided circumstantial evidence of Juday's constructive possession of a firearm. "[C]ircumstantial evidence is sufficient to sustain a conviction when all the *circumstances proved* are consistent with the hypothesis that the accused is guilty and inconsistent with any *rational* hypothesis except that of [the accused's] guilt." *State v. Tscheu*, 758 N.W.2d 849, 857 (Minn. 2008) (quotation omitted). On review, this court gives greater scrutiny to convictions based on circumstantial evidence than those based on direct evidence. *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012). Nevertheless, "we still construe conflicting evidence in the light most favorable to the verdict and assume that the jury believed the State's witnesses and disbelieved the defense witnesses." *Tscheu*, 758 N.W.2d at 858. A defendant must show something more than mere conjecture to overturn a conviction based on circumstantial evidence. *State v. Lahue*, 585 N.W.2d 785, 789 (Minn. 1998).

The first step in reviewing the sufficiency of circumstantial evidence is to identify the circumstances proved. *State v. Hanson*, 800 N.W.2d 618, 622 (Minn. 2011). "In identifying the circumstances proved, we defer . . . to the jury's acceptance of the proof of these circumstances and rejection of evidence in the record that conflicted with the circumstances proved by the State." *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010) (quotation omitted).

10

The second step is to "examine independently the reasonableness of all inferences that might be drawn from the circumstances proved, including inferences consistent with a hypothesis other than guilt." *Hanson*, 800 N.W.2d at 622 (quotation omitted). In this independent examination, "we give no deference to the fact finder's choice between reasonable inferences." *Andersen*, 784 N.W.2d at 329–30 (quotation omitted). This review does not require the evidence to exclude "possibilities of innocence"; it must only make any theory of innocence "seem unreasonable." *Tscheu*, 758 N.W.2d at 858.

"Possession of a firearm may be proved through actual or constructive possession." *State v. Salyers*, 858 N.W.2d 156, 159 (Minn. 2015). The intention of the constructive-possession doctrine

> is to include within the possession statute those cases where the state cannot prove actual or physical possession at the time of arrest but where the inference is strong that the defendant at one time physically possessed the [item] and did not abandon his possessory interest in the [item] but rather continued to exercise dominium and control over it up to the time of the arrest.

*Id.* (quotation omitted). Constructive possession can be established by demonstrating that the prohibited item was found in a place under the exclusive control of the defendant, or "if the prohibited item was found in a place to which others had access, there is a strong probability (inferable from other evidence) that defendant was at the time consciously exercising dominion and control over it." *Id.* (quotation omitted). "An offender who place[s] a firearm where it is discovered has constructive possession of the firearm." *Salcido-Perez v. State*, 615 N.W.2d 846, 846, 848 (Minn. App. 2000), *review denied* (Minn. Sept. 13, 2000).

11

The circumstances proved include the following: the rifle was found in Juday's former bedroom; there was one spent and one unspent cartridge in the rifle; the window in Juday's old room had no screen and was open despite the cold weather; and E.J. stated that Juday had fired at a crow through that window.

Next, we must determine if the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis other than guilt. We conclude that the only rational inference is that Juday had the gun and left it there after shooting it. Because the state needed only to prove that Juday placed the firearm where it was discovered, *see* *Salcido-Perez*, 615 N.W.2d at 846, we conclude that the evidence is sufficient to support Juday's conviction.

**Affirmed.**