*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1005**

State of Minnesota,
Respondent,

vs.

Joseph Ray Burrell,
Appellant.

**Filed April 25, 2016
Affirmed
Reyes, Judge**

Blue Earth County District Court
File No. 07CR142474

Lori Swanson, Attorney General, Edwin W. Stockmeyer, Assistant Attorney General, St. Paul, Minnesota; and

Patrick McDermott, Blue Earth County Attorney, Mankato, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Klaphake, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**REYES**, Judge

Appellant argues that there is insufficient evidence to support his conviction of aiding and abetting first-degree sale of a controlled substance. We affirm.

**FACTS**

On the night of March 6, 2014, appellant Joseph Ray Burrell and his friend, C.G., drove together to meet appellant's girlfriend, Ashley Stillwell, to exchange approximately one ounce of methamphetamine.[1] C.G. accompanied appellant because the two planned to go on a drug run to the Twin Cities following the exchange. The first attempted exchange between appellant and Stillwell was interrupted when an officer drove up in his squad car. The officer testified that he happened upon the vehicles in a parking lot and, as he approached, the vehicles separated. C.G. also confirmed through his trial testimony that the officer interrupted the first attempted exchange between appellant and Stillwell.

Appellant and Stillwell later reconnected for the exchange. Both Stillwell and C.G. confirmed that this exchange occurred and that appellant gave Stillwell one ounce of methamphetamine. Stillwell testified that she was told to get rid of the methamphetamine for $2,000. According to Stillwell and C.G., the methamphetamine was packaged in a plastic bag. Additionally, both stated that appellant passed Stillwell the drugs through the driver's side window of his vehicle and the passenger's side window of the vehicle Stillwell was in. Appellant and Stillwell were living together at

---

[1] The quantity of methamphetamine exchanged and later sold was disputed at trial. Neither party disputes the quantity on appeal.

this time. Stillwell was unsure why appellant did not give her the methamphetamine at their residence but assumed it was because he did not have it when they were together.

Following the exchange, Stillwell went shopping at Walmart and, soon after, met her buyer, who was an undercover agent, in the Walmart parking lot. There, Stillwell sold the methamphetamine for $2,000 to the buyer. Immediately after the sale, the agent identified himself as a member of the Minnesota River Valley Drug Task Force (MRVDTF) and took Stillwell into custody. Through his testimony, the agent confirmed that Stillwell was inside the Walmart store when he arrived and that she later met him in the parking lot. The agent also stated that he and Stillwell had originally agreed to meet earlier in the day, but Stillwell postponed the meeting, and he was unsure why.

When first questioned by the agent, Stillwell identified C.G. as her source. But Stillwell eventually informed the agent that appellant supplied her with the methamphetamine. Stillwell stated that she did not immediately implicate appellant because she was "trying to protect [her] boyfriend." Stillwell testified that she knew appellant sold drugs, that she was not personally accustomed to handling such a large quantity of methamphetamine, and that she did not know anyone other than appellant who could get her that much methamphetamine. According to the MRVDTF agent, appellant was "in a different league" than C.G. with respect to controlled-substance sales and, based on his training and experience, C.G. was more of a "low level . . . user dealer." A second MRVDTF agent also testified that he knew appellant to be a high-level drug dealer in the area.

The sole witness appellant called at trial was J.K., who testified that he went to C.G.'s house in the early morning hours of March 7, 2014, to buy methamphetamine. J.K. stated that C.G. was angry and nervous that Stillwell had stolen an ounce from him.

Appellant waived his right to a jury trial, and the district court found appellant guilty of aiding and abetting first-degree sale of a controlled substance in violation of Minn. Stat. §§ 152.021, subd. 1(1), 609.05, subd. 1 (2012). The district court acquitted appellant of the sale and conspiracy charges. Appellant filed a motion for reconsideration. The court denied appellant's motion and sentenced him to 189 months in prison. This appeal follows.

## D E C I S I O N

### I. Accomplice testimony

Appellant first asserts that Stillwell's accomplice testimony was not sufficiently corroborated to restore confidence in its truthfulness. We disagree.

The parties do not dispute that Stillwell was an accomplice. Accomplice testimony is inherently suspect, *State v. Jackson*, 746 N.W.2d 894, 898 (Minn. 2008), because of concern that an accomplice will offer self-serving, dishonest testimony, *State v. Clark*, 755 N.W.2d 241, 253 (Minn. 2008). Therefore, a conviction cannot be based on the uncorroborated testimony of an accomplice. *See* Minn. Stat. § 634.04 (2012). "[W]e have long held that evidence is sufficient to corroborate an accomplice's testimony when it is weighty enough to restore confidence in the truth of the accomplice's testimony." *Clark*, 755 N.W.2d at 253 (quotation omitted). An accomplice's testimony need not be corroborated "on every point or element of the crime." *State v. Lemire*, 315 N.W.2d 606,

4

610 (Minn. 1982). "The precise quantum of corroborative evidence needed necessarily depends on the circumstances of each case, but corroborative evidence does not need to be sufficient to establish a prima facie case of the defendant's guilt or sustain a conviction." *Clark*, 755 N.W.2d at 253–54 (quotation omitted).

When the sufficiency of corroborating evidence is challenged, we view such evidence in the light most favorable to the verdict and resolve any inconsistencies in favor of the state. *State v. Pippitt*, 645 N.W.2d 87, 93 (Minn. 2002). In determining whether an accomplice's testimony is corroborated, "[t]he defendant's entire conduct may be looked to for corroborating circumstances." *Clark*, 755 N.W.2d at 254 (quotation omitted). The following facts may be used to corroborate an accomplice's testimony and link appellant to the crime: (1) participation in the preparation for the criminal act; (2) opportunity and motive; (3) proximity of appellant to the place where the crime was committed under unusual circumstances; (4) association with persons involved in the crime in such a way as to suggest joint participation; and (5) possession of an instrument or instruments probably used to commit the offense. *Id.*

Here, the first four facts are present. Appellant supplied Stillwell with the narcotics sold to the MRVDTF agent. Appellant and Stillwell had the opportunity and motive to sell methamphetamine. Appellant was in close proximity to the exchange and sale. Finally, appellant and Stillwell were living together and romantically involved at the time of the offense, indicating a close association between the two to suggest their joint participation in criminal activity. These facts corroborate Stillwell's testimony.

5

In addition, testimony of other witnesses can also restore confidence in the truth of an accomplice's testimony. *See Lemire*, 315 N.W.2d at 610-11 (discussing testimony of several other witnesses as independent, corroborating evidence). Stillwell's testimony was directly corroborated by the testimony of several other witnesses. The testimony of both C.G. and the officer supported Stillwell's testimony with respect to the attempted exchange of methamphetamine. C.G. confirmed the subsequent meeting and successful exchange. And the first MRVDTF agent corroborated Stillwell's testimony regarding her presence in Walmart when he arrived and the sale in the Walmart parking lot.

Appellant points to a single statement made by Stillwell during her testimony, that appellant told her to "get rid of [the methamphetamine] for $2--for $2,000," and argues that, because this particular statement was not corroborated, the court should conclude that Stillwell's testimony as a whole is insufficiently corroborated. But the Minnesota Supreme Court has expressly rejected appellant's interpretation of the accomplice-testimony corroboration requirement. *Clark*, 755 N.W.2d at 251-55. In rejecting this approach, the majority stated that "focusing so narrowly on whether the evidence corroborated specific statements during [the accomplice's] testimony . . . departs from the principles that have guided our analysis of accomplice-testimony corroboration since we decided *Rasmussen*, 241 Minn. at 313, 63 N.W.2d at 3, over 50 years ago." *Id.* at 255.

Therefore, we conclude that Stillwell's testimony was sufficiently corroborated by other evidence to restore confidence in her testimony and allow it to be considered for the purposes of our circumstantial-evidence analysis of appellant's knowledge and intent.

## II. Knowing and intentional

Appellant further argues that the record contains insufficient evidence that he knowingly and intentionally aided and abetted a first-degree controlled substance sale. We are not persuaded.

"A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1 (2012). "To impose liability under the aiding and abetting statute, the state must show some knowing role in the commission of the crime by a defendant who takes no steps to thwart its completion." *State v. Ostrem*, 535 N.W.2d 916, 924 (Minn. 1995) (quotation omitted). "Mere presence at the scene of a crime does not alone prove that a person aided or abetted." *Id.* But "active participation in the overt act which constitutes the substantive offense is not required." *Id.* "A jury may infer the requisite state of mind from a variety of facts, including presence at the scene of the crime, [and] a close association with the principal offender before and after the crime." *State v. Bahtuoh*, 840 N.W.2d 804, 810 (Minn. 2013). Additionally, "[e]vidence tending to show an intent to sell or distribute includes evidence as to the large quantity of drugs possessed." *State v. Hanson*, 800 N.W.2d 618, 623 (Minn. 2011) (quotation omitted).

A conviction can rest on direct or circumstantial evidence. *See, e.g., State v. Silvernail*, 831 N.W.2d 594, 598-600 (Minn. 2013); *State v. Flowers*, 788 N.W.2d 120, 133-34 (Minn. 2010). "The [s]tate ordinarily proves a criminal defendant's mental state by circumstantial evidence." *See Bahtuoh*, 840 N.W.2d at 809. Here, the state offered

only circumstantial evidence of appellant's knowledge and intent. When a conviction is based on circumstantial evidence, we apply a two-step analysis. *Silvernail*, 831 N.W.2d at 598. First, we identify the circumstances proved, assuming that the fact-finder resolved any factual disputes in a manner that is consistent with the fact-finder's verdict. *Id.* at 598-99. Second, we independently examine the reasonableness of the inferences the fact-finder could draw from those circumstances. *Id.* at 599. All circumstances proved must be consistent with guilt and inconsistent with any rational hypothesis except that of guilt. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010).

A review of the record demonstrates that the following are circumstances proved: (1) Stillwell and appellant were living together and romantically involved at the time of the narcotics sale; (2) appellant was known by law enforcement as one of the area's "higher level" drug dealers; (3) Stillwell suspected that appellant participated in selling drugs; (4) Stillwell was not accustomed to handling an ounce of methamphetamine; (5) appellant was the only person Stillwell knew who could provide her with that quantity of methamphetamine; (6) Stillwell arranged to sell the MRVDTF agent one ounce of methamphetamine in the afternoon on March 6, 2014; (7) at some point, Stillwell rescheduled her meeting with the MRVDTF agent to later that day; (8) Stillwell attempted to meet appellant to receive methamphetamine from him; (9) the initial exchange was interrupted by an officer; (10) appellant and Stillwell subsequently met to exchange the methamphetamine; (11) appellant handed Stillwell the methamphetamine, contained in a plastic bag, by passing the drugs through the driver's side window of his car and the passenger side window of the vehicle Stillwell was in; (12) Stillwell was

given an ounce of methamphetamine and told to sell it for $2,000; and (13) soon after the exchange with appellant, Stillwell met the MRVDTF agent in the Walmart parking lot and sold him the methamphetamine she was given for $2,000.

A review of the circumstances proved leads unerringly to the conclusion that appellant knowingly and intentionally aided Stillwell in the methamphetamine sale. The quantity of methamphetamine exchanged alone tends to show an intent to sell or distribute. *Hanson*, 800 N.W.2d at 623. Furthermore, the temporal relation between appellant's meeting with Stillwell and Stillwell's subsequent meeting with the MRVDTF agent suggests that appellant knew the purpose for which he was supplying the drugs and therefore intended to further the sale. In addition, appellant and Stillwell were living together and romantically involved, demonstrating a close association between them before, during, and after the crime. *Bernhardt v. State*, 684 N.W.2d 465, 477 (Minn. 2004) ("[P]resence, companionship, and conduct before and after an offense is committed are relevant circumstances from which the jury may infer criminal intent." (quotation omitted)).

Appellant takes issue with the inference that he instructed Stillwell to sell the methamphetamine for $2,000. A review of Stillwell's testimony shows that she did not specifically attribute this instructive statement to appellant. But Stillwell unambiguously identified appellant as providing her with the drugs. And appellant was the only person Stillwell knew who could provide her with that quantity of methamphetamine. We therefore conclude on independent examination that it was reasonable for the fact-finder

9

to attribute the sale instructions to appellant. *Silvernail*, 831 N.W.2d at 599 (quoting *Andersen*, 784 N.W.2d at 329).

Appellant proposes two alternative rational hypotheses: (1) appellant thought Stillwell was simply going to hold the methamphetamine for him while he went to the Twin Cities, and he was unaware that Stillwell planned to sell the methamphetamine to the MRVDTF agent or (2) Stillwell obtained the methamphetamine from another source. None of the circumstances proved support either of appellant's alternate hypotheses. While J.K.'s testimony could have supported appellant's second rational hypothesis, the district court explicitly noted that J.K.'s testimony seemed "rehearsed" and rejected it as not credible. As such, it was not a circumstance proved, and we may not consider it in support of an alternate rational hypothesis. *Silvernail*, 831 N.W.2d at 599. Because appellant's arguments are based on circumstances that were not proved or mere conjecture, they are unavailing. *Andersen*, 784 N.W.2d at 330.

We conclude that sufficient evidence supports the district court's determination that appellant knowingly and intentionally aided a first-degree controlled-substance sale.

**Affirmed.**